DELAN PERRY; JENNY PARIJS; LESLEY HILL HIGGINS and RICHARD HIGGINS, Appellants-Appellees, *v.* PLANNING COMMISSION OF THE COUNTY OF HAWAII; COUNTY OF HAWAII PLANNING DEPARTMENT; LAND USE COMMISSION OF THE STATE OF HAWAII; ARTHUR W. MARTIN, CHAIRMAN OF THE PLANNING COMMISSION OF THE COUNTY OF HAWAII; EDDIE TANGEN, CHAIRMAN OF THE LAND USE COMMISSION OF THE STATE OF HAWAII; RAYMOND H. SUEFUJI, DIRECTOR OF THE COUNTY OF HAWAII PLANNING DEPARTMENT; SHIELD-PACIFIC LTD., SPECIAL PERMIT APPLICANT AS DEVELOPER; and KAPOHO LAND AND DEVELOPMENT COMPANY, SPECIAL PERMIT APPLICANT AS LAND OWNER, Appellees-Appellants

NO. 6382

NOVEMBER 7, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM, NAKAMURA, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

This case is before us on an appeal from an order and judgment of the Circuit Court of the Third Circuit reversing and vacating an order of the Land Use Commission of the State of Hawaii that approved the grant of a special land use permit by the Planning Commission of the County of Hawaii. Appellants here (appellees below) are the government agencies that respectively granted and approved the permit (the County Planning Commission and the State Land Use Commission), their chairmen (Arthur W. Martin and Eddie Tangen), the county department that processed the application for the permit (County of Hawaii Planning Department), its director (Raymond H. Suefuji), and the applicants for the permit (Shield-Pacific, Ltd. and Kapoho Land and Development Company). Appellees (appellants below) are persons who objected to the grant and approval of the permit in proceedings before the commissions and successfully petitioned the circuit court for judicial review and a reversal of the agency determinations. The circuit court's reversal of the planning and the land use commission decisions was grounded on conclusions that: (1) a procedural requirement for processing special permits had not been complied with; (2) the conditions imposed by the Land Use Commission upon the approval of the permit were invalid; and (3) the scope of the approved permit was broader than the application.[1] After carefully reviewing the record, we conclude the circuit court

---

[1] The pertinent portion of the circuit court's order reads as follows:

A. That the public hearing mandated by Section 205-6, Hawaii Revised Statutes, was not held within the required 120 days from the receipt on May 16, 1974, of the application for special permit submitted by Appellee, SHIELD-PACIFIC, LTD.

B. That the conditions attached by Appellee, LAND USE COMMISSION, to the approval of said application for special permit as recommended by Appellee, HAWAII PLANNING COMMISSION, unlawfully shifted burden to Appellants, therefore denying due process of law.

C. That the inclusion of screening and crushing operations and a cement batching plant as approved uses under the special permit approved by the LAND USE COMMISSION was beyond the scope of the original application.

erred in setting aside the grant and approval of the special permit and reverse the circuit court.

I.

On May 16, 1974, Shield-Pacific, Ltd. and Kapoho Land and Development Company (hereafter jointly referred to as Applicants) filed an application with the County of Hawaii Planning Department, seeking permission to use approximately sixty-five acres of land situated in Kapoho, Puna, Hawaii for "quarrying purposes."[2] Since the land was within an "agricultural" district for purposes of the Land Use Law, HRS Chapter 205, favorable actions upon the request by both the County of Hawaii Planning Commission and the State Land Use Commission were necessary before such use was permissible.

The director of the planning department acknowledged receipt of the application by a letter dated May 20, 1974, also informing applicants thereby that the planning commission would conduct a public hearing on the application within one hundred twenty days. The director also transmitted copies of

---

[2] Applicants set forth their "reasons for requesting Special Permit" as follows:

The subject property is an abandoned old quarry site. The quarry site was in use in the 1920's and provided rock aggregates and boulders for the breakwater at Hilo Bay, beddings of railroads and roads constructed by the sugar plantations.

The quarry is located on a rift zone and is covered with volcanic cinders. It is presently zoned "Agriculture 3 Acres" and is designated as extensive agriculture on the "Land Use Allocation Map", County of Hawaii. Its intended use to being pasturage and range lands is nil. It cannot in its present state be used except as a quarry.

The developer intends to quarry the material into aggregates to be used on all types of construction. The impact on the surrounding area shall be negligible as in the 1920's when the quarry was operating at a much fuller capacity. The impact shall, in fact, be less as Board of Health with its new air pollution and noise pollution regulations oversee the quarry operations.

An old abandoned railroad and a network of roads provide several routes to and from the quarry. These roads are in existance [sic] and are used sparsely by farmers. (Road network can be seen on the accompanying map.)

The use of the land as a quarry site shall be the highest and best use and shall benefit the public by providing aggregates needed for the Construction Industry.

the application to other agencies such as the state departments of agriculture, health, and transportation and the county police, fire, and water supply departments, requesting their comments. On July 26, 1974, he again wrote applicants, informing them that an initial review of the application indicated further information relative to the site and proposed operations was required.[3] Receiving no quick response thereto, the director reiterated the request for information by letter dated August 7, 1974; the letter also stated:

> Inasmuch as there is a maximum number of days in which the Planning Commission must conduct a public hearing on the request, we would appreciate submission of the information as soon as possible. *The official date of receipt of the application shall be upon submission of the information.* (Underscoring added).

Shield-Pacific replied to the request for further information on September 3, 1974, submitting maps and other specific responses to the director's inquiries. On September 16, 1974, the director wrote Shield-Pacific to "officially acknowledge receipt on September 11, 1974 of the . . . special permit application" and to inform applicants that a public hearing on their request would be conducted within one hundred twenty days of the receipt of the application.

The planning commission, after due notice given adjoining property owners by letters dated October 22, 1974, and the general public by publication of notices in the Hawaii Tribune-Herald on October 28 and November 5, 1974, conducted public hearings on the application on November 7, 1974 and January 30, 1975. Strong objections to the proposed

---

[3] The letter specifically requested applicants to submit the following:
1) A site plan drawn to scale showing:
   a) The exact boundaries and area of the proposed quarry
   b) Any proposed structures within these boundaries
   c) Ingress and egress within the proposed quarry
   d) The type of operation (open pit, grading, shelf, etc.)
   e) Equipment storage area
   f) Stockpiling area if any
   g) The approximate length of time of the operation; and
2) A location map showing:
   a) The exact routes to be used when leaving the proposed quarry area

quarrying operations were registered by numerous witnesses; fewer supported the proposal. Those opposing the grant of a permit did so primarily on grounds that agricultural pursuits in the vicinity would be jeopardized, rural "life styles" would be adversely affected, and adverse geological consequences would probably follow. Those supporting the application did so primarily because of economic considerations. There was also testimony presented by applicants and others that tended to minimize the possible adverse effects. In short, the emotionally-charged hearings generated much heat and shed some light.

On March 6, 1975, the planning commission voted to permit the requested use, but with stringent limitations. The restrictive conditions included compliance with applicable state and county rules and regulations "governing air, noise, drainage, and safety," a five-year time limitation on the special use, a restriction of the quarrying operations to weekdays between 7:00 a.m. and 5:00 p.m., a reduction in the area to be quarried to twenty-five acres, a limitation of quarry facilities and equipment to a portable crusher, a portable office and toilet, and a small storage building, and several other conditions. The conditions reflected recommendations of the State Board of Agriculture and the County Planning Department designed to minimize adverse effects upon agricultural pursuits and the environment.

Pursuant to HRS § 205-6, the planning commission's decision, including its findings and special conditions, was then transmitted to the State Land Use Commission for further consideration.[4] On May 1, 1975, after a lengthy public meet-

---

[4] HRS § 205-6 read as follows in 1974 and 1975:

Special permit. The county planning commission may permit certain unusual and reasonable uses within agricultural and rural districts other than those for which the district is classified. Any person who desires to use his land within an agricultural or rural district other than for an agricultural or rural use, as the case may be, may petition the planning commission of the county within which his land is located for permission to use his land in the manner desired.

The planning commission shall conduct a hearing within a period of not less than thirty nor more than one hundred twenty days from the receipt of the petition. The planning commission shall notify the land use commission and such

ing where proponents and opponents of the application again voiced their support or concerns, the Land Use Commission approved the special permit without modification. The formal decision and order, however, was entered on May 29, 1975.

Appellees Delan Perry, Jenny Parijs, Lesley Hill Higgins, and Richard Higgins, some of the owners of property adjoining the proposed quarry site, filed a timely Notice of Appeal from the foregoing decision and order to the circuit court on June 30, 1975. Their Statement of the Case alleged, *inter alia,* that (1) the application was void because the Planning Commission failed to conduct a hearing within one hundred and twenty days of its receipt and, therefore, the Land Use Commission lacked jurisdiction to act on the permit; (2) the terms of the permit unlawfully shifted the burden of enforcing compliance with the special conditions thereof to adjoining landowners; (3) the granted permit exceeded the scope of the application; (4) the record transmitted to the Land Use Commission was incomplete in several respects; and (5) the Land Use Commission's conclusion that no environmental impact statement was required in the particular situation was erroneous. The circuit court agreed with appellees on the first three points, but concluded the other two lacked merit. Its

persons and agencies that may have an interest in the subject matter of the time and place of the hearing.

The planning commission may under such protective restrictions as may be deemed necessary, permit the desired use, but only when the use would promote the effectiveness and objectives of this chapter. The planning commission shall act on the petition not earlier than fifteen days after the public hearing. A decision in favor of the applicant shall require a majority vote of the total membership of the planning commission, which shall be subject to the approval of the land use commission, provided that the land use commission may impose additional restrictions as may be necessary or appropriate in granting such approval, including the adherence to representations made by the applicant. A copy of the decision together with the findings shall be transmitted to the commission within sixty days after the decision is rendered. Within forty-five days after receipt of the county agency's decision, the commission shall act to approve, approve with modification, or deny the petition. A denial either by the county agency or by the commission, or a modification by the commission, as the case may be, of the desired use shall be appealable to the circuit court of the circuit in which the land is situated and shall be made pursuant to the Hawaii Rules of Civil Procedure.

The provision for a hearing within a specific time was deleted by S.L.H. 1978, c. 166.

order and judgment setting aside the grant and approval of the special permit was filed on July 19, 1976. A timely appeal to this court from the circuit court's judgment was filed on August 17, 1976.

The issues presented for determination are (1) whether the provision in HRS § 205-6 that a public hearing on an application for a special permit be conducted within one hundred and twenty days was mandatory or directory; (2) whether the burden of enforcing compliance with the conditions imposed by the special permit was illegally shifted to adjoining landowners; and (3) whether the permit was invalid because it exceeded the scope of the application.

## II.

Appellants argue the circuit court erred by concluding a public hearing on the application for a special permit was not conducted by the planning commission within the time specified by law. They maintain the application in question was actually "received" by the director of the planning department on September 11, 1974 and as the hearing commenced on November 7, 1974, there was no breach of time requirements set forth in HRS § 205-6. They further assert the circuit court's conclusion in this regard was erroneous, even assuming, *arguendo*, the filing of an application on May 16, 1974. The pertinent time provision in their view was merely directory, not mandatory.

The record reflects a plausible basis for appellants' contention that the application upon which the planning commission acted was actually received in September.[5] However, we believe a sounder basis for determining this question of pro-

---

[5] The planning director's letter of August 7, 1974 stated that "[t]he official date of receipt of the application shall be upon receipt" of information requested earlier. The information sought was furnished on September 3, 1974 and the director "officially acknowledged receipt of the special permit application" on September 11, 1974. Applicants had every reason to believe they had filed their application in September.

cedural compliance lies in a reasonable application of the statutory language involved, with due regard for its policy and purpose.

### A.

Land use and zoning were formerly considered matters primarily of local concern to be dealt with by the counties. State primacy in the area of land use was established in 1961 through legislative action[6] prompted by the perception of a necessity for controls on a broader basis "to preserve, protect and encourage the development of lands . . . for . . . uses to which they are best suited for the public welfare."[7] Two years later, the Legislature found it necessary to revamp the law to facilitate the implementation of the purposes and policies of the pioneering legislation.[8] Among other problems, it specif-

---

[6] S.L.H. 1961, c. 187.

[7] Section 1 of Act 187 read as follows:

Findings and declaration of purpose. Inadequate controls have caused many of Hawaii's limited and valuable lands to be used for purposes that may have a short-term gain to a few but result in a long-term loss to the income and growth potential of our economy. Inadequate basis for assessing lands according to their value in those uses that can best serve both the well-being of the owner and the well-being of the public have resulted in inequities in the tax burden, contributing to the forcing of land resources into uses that do not best serve the welfare of the State. Scattered subdivisions with expensive, yet reduced, public services; the shifting of prime agricultural lands into nonrevenue producing residential uses when other lands are available that could serve adequately the urban needs; failure to utilize fully multiple-purpose lands; these are evidences of the need for public concern and action.

Therefore, the Legislature finds that in order to preserve, protect and encourage the development of the lands in the State for those uses to which they are best suited for the public welfare and to create a complementary assessment basis according to the contribution of the lands in those uses to which they are best suited, the power to zone should be exercised by the State and the methods of real property assessment should encourage rather than penalize those who would development [sic] these uses. (Note omitted).

[8] The pertinent legislative findings and declaration of purpose were stated in S.L.H. 1963, c. 205, as follows:

*Experience and research* to date on the application of the provisions of Act 187, Session Laws of Hawaii 1961, *have demonstrated the need for clarifying the provisions of said Act 187* not only with reference to the division of authority between the land use commission and the counties, but also *with respect to the*

ically noted "the hardship caused to land owners who wish to develop lands included in agricultural districts but where such lands are not at all suitable for agricultural uses."[9] And the amendatory legislation's purpose, in part, was "to provide for a more effective administration and a more equitable application of the provisions" of the Land Use Law.[10]

Viewing HRS § 205-6 within the foregoing context, we are satisfied the one hundred twenty day period formerly prescribed for the conduct of public hearings was intended to counter possible administrative sluggishness and to promote expeditious determinations.[11] Since the interests of neither the county planning commission, the adjoining landowners, nor the public were likely to be advanced by quick administrative action at this stage of proceedings on special permit requests, we further believe the provision was enacted for the primary benefit of those seeking such permits; their interests were more than likely to be enhanced by the expeditious conduct of public hearings.

But the circuit court applied HRS § 205-6 to the detriment of the intended beneficiaries here. Ironically, the harsh penalty of voidance of favorable agency action was visited upon applicants for a presumed dereliction of the planning department. This unfairness may explain why courts do not always ascribe mandatory effect to procedural provisions, though the relevant statutory language, as in this case, may be obligatory

---

*hardship caused to land owners who wish to develop lands included in agricultural districts but where such lands are not at all suitable for agricultural uses. The purpose of this Act, therefore, is to clarify the provisions of Act 187, Session Laws of Hawaii 1961, in order to provide for a more effective administration and a more equitable application of the provisions of said Act 187.* (Underscoring added).

[9] *Id.*

[10] *Id.*

[11] The language prescribing a hearing within one hundred and twenty days of the receipt of an application was deleted from HRS § 205-6 by S.L.H. 1978, c. 166.

in form. For "shall" has often been read in a non-mandatory sense, particularly where a statute's purpose and the unjust consequences of a mandatory reading confute the probability of a compulsory statutory design. 2A C. Sands, *Sutherland on Statutory Construction* § 57.19, at 443-44 (4th ed. 1973); *Usery v. Whitin Machine Works, Inc.*, 554 F.2d 498, 502 (1st Cir. 1977); *Diamond Match Co. v. United States*, 181 F. Supp. 952, 958-59 (Cust. Ct. 1960).

A crucial difference between statutes considered directory and those deemed mandatory arises from the consequences of noncompliance. A failure to follow the former is unattended by serious legal consequences; a neglect of the latter may invalidate a transaction or subject the transgressor to legal liabilities. 1A C. Sands, *Sutherland on Statutory Construction* § 25.03, at 298-99 (4th ed. 1972); *County of Maui v. de Rego*, 24 Haw. 608, 615 (1919). Where there is a manifest necessity for strict compliance or a clear expectancy thereof, the provision is accorded mandatory status and the administrative agency's power to act may hinge upon precise adherence to the law. *Id.* Notice and hearing requirements are within the foregoing category because of obvious due process considerations. *Winslow v. Zoning Board of City of Stamford*, 143 Conn. 381, 387, 122 A.2d 789, 793 (1956). Seemingly absolute time periods for administrative action, on the other hand, are often considered mere guides for the conduct of business with dispatch and for orderly procedure. *See Heller v. Wolner*, _____ Minn. _____, _____, 269 N.W.2d 31, 33 (1978); *City of Hutchinson v. Ryan*, 154 Kan. 751, 756-57, 121 P.2d 179, 182 (1942); *Horse Creek Conservation Dist. v. Lincoln Land Co.*, 50 Wyo. 229, 237, 59 P.2d 763, 765 (1936). They have generally been characterized as directory, unless time is of the essence of the act required, the statute contains negative language denying the exercise of authority beyond the period prescribed for action, or a disregard of the relevant provision would injuriously affect public interests or private rights. *Taylor v. Department of Transportation*, 260 N.W.2d 521, 523 (Iowa 1977); *Sanchez v. Walker County Department of Family & Children Services*, 237 Ga. 406, 410, 229 S.E.2d 66, 69 (1976); *Carrigan v. Illinois Liquor Control Commission*,

19 Ill. 2d 230, 233, 166 N.E.2d 574, 576 (1960). And "the word 'shall' may be held to be merely directory, when no advantage is lost, when no right is destroyed, when no benefit is sacrificed, either to the public or to the individual, by giving it that construction." *Wisdom v. Board of Supervisors*, 236 Iowa 669, 680-81, 19 N.W.2d 602, 608 (1945); *See also Jack Endo Electric Co. v. Lear Siegler, Inc.*, 59 Haw. 612, 585 P.2d 1265 (1978).

Viewing the pertinent provision within a context of its purpose, the facts involved, and relevant precedent, there is only room for a conclusion that the language should have been read to have non-mandatory effect — any other ruling would be inconsistent with fundamental fairness. In reaching the conclusion we note: (1) there was nothing in HRS § 205-6 to negate the planning commission's authority to conduct a delayed hearing; (2) time was clearly not of the essence and the parties shared this opinion — the agency delayed the hearing to secure more information on the special permit request, the applicants countenanced the delay, and the appellees sought a continuance of the hearing; and (3) no public interests or private rights were jeopardized by the delay. There was no discernible loss or destruction of advantage, benefit, or right on anyone's part occasioned by the delay. Thus, there was no sound reason for divesting the agency of power to act in this situation. Nor was there a basis for imposing the harsh penalty of a nullification of favorable agency action on applicants for the agency's supposed neglect.

B.

Appellees argue *Town v. Land Use Commission*, 55 Haw. 538, 524 P.2d 84 (1974); *The Hawaii Corporation v. Kim*, 53 Haw. 659, 500 P.2d 1165 (1972); and *Territory v. Fasi*, 40 Haw. 478 (1954) mandate affirmance of the circuit court's judgment. However, the foregoing cases are not controlling for reasons stated below.

The time provision at issue in *Town v. Land Use Commission, supra,* called for a decision by the commission on a boundary change petition before the lapse of ninety days following a hearing thereon, but the decision was made after one hundred seventy-five days had elapsed. We observed the adjoining landowners had been placed in "a state of limbo" after the hearing at the discretion of the applicant or the commission by the continuances requested by the petitioner and granted by the commission, 55 Haw. at 544, 524 P.2d at 88. We found that:

> The appellant was placed in an impossible position, which worked only to the advantage of the petitioner. Petitioner was allowed to pick and choose the meeting at which he felt his petition would receive the most favorable treatment, or wait until such time as the other interested parties, either for financial reasons or for sheer lack of time, had given up on making an appearance at a meeting at which there was no guarantee that a decision would be reached.

55 Haw. at 545, 524 P.2d at 89. Where public interests and private rights are adversely affected by procedural irregularity or agency indiscretion, we would not hesitate to follow *Town.* But this is an inappropriate occasion for its application. The delay here occurred prior to the publication of notice of hearing, before any administrative action that might have been to the advantage of either applicants or adjoining landowners.

*The Hawaii Corporation v. Kim, supra,* involved a requirement of timely notice of an intention to bid on a state construction contract. The period fixed by law for the filing of notice was six days prior to the opening of bids. The circuit court concluded the statute's purpose was to enable public officers charged with the responsibility of letting public contracts to determine the qualifications of prospective bidders, and we agreed. As neither the purpose of the law nor the public interest would have been served unless the notice was timely filed, we ruled a notice within the prescribed time period was mandatory. Moreover, a period prescribed for the

filing of a notice or an application by a private person is generally regarded as mandatory.[12]

In *Territory v. Fasi, supra,* the question was whether a statutory period for the submission of an expense statement by a candidate for public office was mandatory or directory. The relevant statute also contained "a provision that any candidate who shall fail to file a statement of expenses shall be guilty of a misdemeanor punishable by fine of not more than $500 or by imprisonment for not more than six months." 40 Haw. at 480. Relying on a proposition that " '[i]t is a general rule of construction that where a legislative provision is accompanied by a penalty for a failure to observe it, the provision is mandatory.' (50 Am. Jur., Statutes, § 27, p. 49; *In Re Cramer's Election Case,* 248 Pa. St. 208.)," we ruled the twenty-day period fixed by law was mandatory. 40 Haw. at 481. If not, the criminal statute might have been rendered unenforceable. Again, the cited precedent is good law, but nonetheless inapposite.

## III.

Appellants further assert the circuit court erroneously determined that the conditions attached to the special permit "unlawfully shifted" a burden to the adjoining landowners. We also conclude the court erred here.

HRS § 205-6 empowers a county planning commission and the Land Use Commission to allow land within an agricultural district to be put to another use when it "would promote the

---

[12] The statement in *Sutherland* in this regard is:

> As a general proposition, the rule with respect to statutory directions to individuals is the opposite of that which obtains with respect to public officers. When a statute directs things to be done by a private person within a specified time, and makes his rights dependent on proper performance thereof, unless the failure to perform in time may injure the public or individuals, the statute is mandatory. Where an individual is the person not strictly complying, he has no grounds for complaint.

2A C. Sands, *Sutherland on Statutory Construction* § 57.19, at 445 (4th ed. 1973) (footnotes omitted).

effectiveness and objectives" of the Land Use Law. Following two lengthy public hearings and the submission of a comprehensive report from the planning department that included recommendations for stringent limitations upon the proposed special use, the planning commission made lengthy, detailed findings relative to applicants' request. In essence, the commission found the proposed use was consonant with the objectives of the Land Use Law and the county zoning code, it would be a reasonable use of the land involved, it would not adversely affect surrounding property, it would not substantially alter the essential character of the land or the use to which the land was then being put, and it would be the highest and best use of the land involved. And in granting the special permit, the commission imposed "protective restrictions" on the permitted use to protect agricultural enterprises in the vicinity, as recommended by the planning department and as authorized by HRS § 205-6. In the opinion of the circuit court the commission ran afoul of due process in the exercise of this authorized discretion, for the court concluded:

> That the conditions attached by Appellee, LAND USE COMMISSION, to the approval of said application for special permit as recommended by Appellee, HAWAII PLANNING COMMISSION, unlawfully shifted burden to Appellants, therefore denying due process of law.

We have examined the eleven "protective restrictions" placed on the special use. The only language from which it may possibly be inferred that a burden was imposed upon adjoining landowners appears in the first, which reads:

> 1. That every precaution be taken by the applicant so as not to create any inconvenience to surrounding properties in regard to traffic, noise, and dust problems during the quarrying operations. Should the quarrying operations have an adverse effect on surrounding agricultural uses, such as vandas and papaya, sufficient and documented evidence may be submitted to the Planning Director to support any claims which are made that the applicant is creating an inconvenience to surrounding properties. If the Planning Director finds that the evi-

dence submitted shows sufficient cause to reevaluate the special permit, he shall transmit such evidence to the Planning Commission who shall hold a public hearing to gather evidence relative to the impact of the quarrying operations on surrounding lands. Upon receiving any complaint which is accompanied by documented evidence relative to the impact of the quarrying operations, the applicant shall cease operations until a determination is made as to whether operations can continue or the special permit is to be revoked.

The actual directive to applicants was that "every precaution . . . so as not to create any inconvenience to surrounding properties in regard to traffic, noise, and dust problems" should be taken.[13] The rest of the paragraph was devoted to the possibility of a subsequent revocation of the permit for noncompliance with the directive. The circuit court apparently decided these provisions were inconsistent with due process. We do not read the language in similar vein.

The grant and approval of the special permit may be characterized for present purposes as "conditional zoning" since it "is an appropriate phrase to describe a zoning change which permits use of a particular property subject to conditions not generally applicable to land similarly zoned." *Scrutton v. County of Sacramento*, 275 Cal. App. 2d 412, 417, 79 Cal. Rptr. 872, 876 (1969); 2 R. Anderson, *American Law of Zoning* § 9.20, at 136-38 (2d ed. 1976); *Cross v. Hall County*, 238 Ga. 709, 713, 235 S.E.2d 379, 382 (1977). Such conditional action is generally upheld when the conditions are imposed

---

[13] There were two other directives of similar character, reading:

4. That the operation be in compliance with all State and County regulations governing air, noise, drainage, and safety. The Planning Department and other related governmental agencies shall assist the Department of Health in monitoring the subject operations.

and

"11. That all other applicable rules and regulations of the State and County be complied with."

Apparently, enforcement of these two conditions was to be left to other State and County agencies charged with the responsibility of enforcing the applicable laws.

for the protection or benefit of neighbors to ameliorate the effects of the zoning change. *Cross v. Hall County, supra,* 238 Ga. at 713, 235 S.E.2d at 382.

In our opinion, the conditions, *ipso facto,* furnished no ground for the invalidation of the special permit. HRS § 205-6 authorized the exercise of discretion to condition the permitted use upon "protective restrictions," and these conditions were undoubtedly intended to ameliorate deleterious effects of the special use on neighboring agriculture. We also do not perceive a reasonable basis for concluding due process was violated by including provisions therein for the submission of evidence of "adverse effect on surrounding agricultural uses" to the planning director so he could decide whether sufficient cause existed for the commission to schedule a public hearing on a possible revocation of the special permit.

The provision for a hearing on a possible permit revocation was coupled with another that called for a temporary suspension of the permitted use pending the hearing. In effect, the language declared that a failure to comply with the condition could result in a reversion to a former use. Under such circumstances, due process for the permit holders is a relevant, if not a primary, consideration.

Though severely limited in several respects, including duration, permission to use the land for quarrying was, nevertheless, either a property interest, a right, or a privilege. Even if the permit embodied a mere privilege, the "grant of a public privilege may not be conditioned upon the deprivation of constitutional protections." *Transamerica Title Insurance Co. v. City of Tucson,* 23 Ariz. App. 385, 391, 533 P.2d 693, 699 (1975). And "relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' " *Bell v. Burson,* 402 U.S. 535, 539 (1971).

In *Scrutton v. County of Sacramento, supra,* the automatic reversion feature of a proposed rezoning order was deemed invalid, the court viewing the reversion as a second rezoning that would be in violation of procedural requisites of notice, hearing, and planning commission consideration. *Accord, Spiker v. City of Lakewood,* ——— Colo. ———, 603 P.2d 130,

132 (1979). But in *Goffinet v. County of Christian*, 65 Ill. 2d 40, 357 N.E.2d 442 (1976), a zoning appeals board order rezoning a parcel of land from an agricultural to an industrial classification was upheld, even though it contained a provision that impliedly empowered the county zoning enforcement officer to terminate the special use and reclassify the land as agricultural. The court's rationale for upholding the validity of the reverter clause was:

> It clearly follows that one of the enforcing officer's duties is to insure that holders of special use permits and owners of land which has been conditionally zoned comply with the respective conditions and limitations. Therefore, we conclude that when a finding is made by the enforcing officer that the restrictions imposed by a special use permit or the conditions placed upon a rezoning amendment, which we find to be indistinguishable, were not complied with, no other interpretation can be given but that the special use and conditional zoning would terminate and the property would again have the prior zoning classification. An adverse determination by the enforcing officer may be appealed to the zoning board of appeals by the holder of the permit or the owner of the land. This would allow the affected party a hearing before the board to present his case. (Ill. Rev. Stat. 1975, ch. 34, par. 3156.) This procedure is in accordance with the statute and affords the necessary due process safeguards.

65 Ill. 2d at 53-54, 357 N.E.2d at 449 (1976). The procedure approved above resembles the process contemplated by the Hawaii County Planning Commission and the Land Use Commission.

There is little doubt that an automatic reversion for a claimed breach of a condition, without more, would contravene due procedure. *Scrutton v. County of Sacramento, supra; Spiker v. City of Lakewood, supra*. But in our view, the temporary suspension of a special permit upon a "finding" by an enforcement officer of a probable breach, pending a hearing on a possible revocation before the planning commission, would not be invalid. *Goffinet v. County of Christian, supra*.

Following *Goffinet*, we also believe its validity would necessarily be contingent upon a "finding" of a probable breach of a condition by a responsible enforcement officer.[14] A mere complaint filed by adjoining landowners would not suffice; at the least, evidence showing a probable breach would be necessary. The provisions at issue, thus, placed no undue burden on the adjoining landowners. The language was intended to facilitate enforcement of a condition by providing a revocation hearing and allowing a temporary suspension of the permit during its pendency, if sufficient cause for revocation has been demonstrated to the enforcing officer. Otherwise, "relevant constitutional restraints" would definitely have rendered any attempt to enforce the particular condition more difficult.

IV.

Appellants finally contend the circuit court's conclusion with respect to the special permit's scope was erroneous, and we agree. The relevant conclusion was:

That the inclusion of screening and crushing operations and a cement batching plant as approved uses under the special permit approved by the LAND USE COMMISSION was beyond the scope of the original application.

We initially note a discrepancy between this determination and the permit's actual breadth, for the pertinent condition reads:

8. That facilities be limited to: (a) portable crusher, (b) portable office and toilet, and (c) small storage building.

As it contains no reference to a "cement batching plant," our discussion will be confined to whether the inclusion of screen-

---

[14] The planning director is apparently the officer charged with the enforcement of the special permit as the enforcement section of HRS Chapter 205 reads:

§ 205-12 Enforcement. The appropriate officer or agency charged with the administration of county zoning laws shall enforce within each county the use classification districts adopted by the land use commission and the restriction on use and the condition relating to agricultural districts under section 205-4.5 shall report to the commission all violations.

ing and crushing operations within the scope of the permitted use vitiated the permit.

The application filed on March 24, 1975, sought permission "[t]o use approximately 65± acres of land for quarrying operations." In an appended document applicants further stated: "[t]he developer intends to quarry the material into aggregates to be used on all types of construction." When notice of a public hearing was published, it said applicants' request was for a "[s]pecial permit to utilize approximately sixty-five (65) acres of land for quarrying and related purposes within the State Land Use Agricultural District." The transcript of proceedings before the planning commission further indicates all aspects of the proposed operations, including the utilization of portable crushers and the operation of a batching plant, were disclosed by applicants and extensively discussed by both proponents and opponents of the proposal. Copies of communications from appellees to the commissions and others, which are part of the record of proceedings before the commissions, also reveal an awareness that the proposed use extended beyond the extraction of rock from the earth. For example, a letter from Appellees Delan and Jennifer Perry to the Environmental Protection Agency dated December 17, 1974 states: "[w]e are adjoining property owners, residents, and farmers to a proposed quarry, rock crushing operation and cement batching plant in Kapoho, Hawaii." All concerned were undoubtedly apprised that applicants also sought permission to conduct screening and crushing operations.

Modern judicial pleading has been characterized as "simplified notice pleading." Its function is to give opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). That the same, if not more lenient standard, also governs administrative pleadings is indisputable. In the opinion of an Illinois appellate court, for example, the function of written charges in an employee discharge proceeding before an administrative agency is to "simply apprise the accused of the charges against him with reasonable certainty so as to enable

him to intelligently prepare his defense." *Hall v. Lyons*, 71 Ill. App. 3d 1023, 1029, 389 N.E.2d 1309, 1314 (1979) (citations omitted). These "need not be drawn with the refinements and subtleties of pleadings before a court." *Secrest v. Department of Corrections*, 64 Ill. App. 3d 458, 459, 381 N.E.2d 367, 368 (1978). Federal courts tend to follow an even less formal approach to administrative pleadings. In *Aloha Airlines, Inc. v. Civil Aeronautics Board*, 598 F.2d 250 (D.C. Cir. 1979), the court's opinion was that:

> Pleadings in administrative proceedings are not judged by the standards applied to an indictment at common law. It is sufficient if the respondent "understood the issue" and "was afforded full opportunity" to justify its conduct during the course of the litigation. *NLRB v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 350, 58 S. Ct. 904, 82 L.Ed. 1381 (1938); *Tashof v. FTC*, 141 U.S. App. D.C. 274, 437 F.2d 707, 713 (1970); *Kuhn v. CAB*, 87 U.S. App. D.C. 130, 183 F.2d 839, 841-42 (1950); *Swift & Co. v. United States*, 393 F.2d 247, 252 (7th Cir. 1968). Thus, "the question on review is not the adequacy of the . . . pleading but is the fairness of the whole procedure." 2 K. Davis, Administrative Law Treatise, § 8.04 at 525 (1958).

598 F.2d at 262.

Our review of the record indicates appellees were apprised of what was being sought, they were provided full opportunity to be heard in opposition, and the procedures were essentially fair. Thus, there is no basis for declaring the permit invalid because of a discrepancy between the application and the permitted use. The circuit court's holding is contrary to prevailing principles of administrative law that regard such formalism with disfavor.

## V.

Appellees assert the special permit was also void because an environmental impact statement was not filed and because the record of agency proceedings transmitted by the planning commission to the Land Use Commission was incomplete. The contentions are without merit.

The circuit court's judgment is reversed and the case is remanded for the entry of an appropriate judgment consistent with this opinion.

*Paul Mark Clark* for Appellants-Appellees.

*Robert Ben Tsukazaki (Katsuya Yamada* on the briefs) Deputies Corporation Counsel for Appellees-Appellants County of Hawaii, Planning Commission, et al.

Joined in opening brief: *Stephen K. Yamashiro* for Appellee-Appellant Shield-Pacific, Ltd.; and *Gilbert K. Hara* for Appellee-Appellant Kapoho Land & Development Co. Ltd.

*Benjamin M. Matsubara* (Joined in opening brief) Special Deputy Attorney General for Appellees-Appellants Eddie Tangen & Land Use Commission.