**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000121
11-JAN-2016
08:35 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

LIANA KEALOHILANI MARTINEZ, fka L.A. LIANA BECKWITH,
aka LEE ANN MATHIS, aka LEE ANN CHOPRA, aka LEE ANN NOVICK,
aka LEE ROBINSON NOVICK, aka LIANE NOVICH BECKWITH,
aka LIANA KEALOHILANI VAN WYE, Respondent-Appellent-Appellant,
v.
STATE OF HAWAI'I BOARD OF NURSING, Petitioner-Appellee-Appellee

NO. CAAP-15-0000121

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 14-1-1125)

JANUARY 11, 2016,

FOLEY, PRESIDING J., FUJISE AND LEONARD, JJ.

OPINION OF THE COURT BY FOLEY, J.

Respondent-Appellant-Appellant Liana Kealohilani
Martinez, fka L.A. Liana Beckwith, aka Lee Ann Mathis, aka Lee
Ann Chopra, aka Lee Ann Novick, aka Lee Robinson Novick, aka
Liane Novich Beckwith, aka Liana Kealohilani Van Wye (**Martinez**)
appeals from the "Order Affirming Board of Nursing's Final Order"
(**Order**) and "Judgment," both entered on February 17, 2015 in the
Circuit Court of the First Circuit[1] (**circuit court**).

---

[1]     The Honorable Rhonda A. Nishimura presided.

The points of error asserted in Martinez's opening brief are summarized as follows:[2]

(1) the Petitioner-Appellee-Appellee Department of Commerce and Consumer Affairs, Regulated Industries Complaints Office (**DCCA**) failed to provide adequate notice of the charges against Martinez;

(2) the circuit court erred in deferring to the "Board's Final Order" (**Final Order**), entered by Petitioner-Appellee-Appellee Board of Nursing (**Board**) on April 4, 2014, because the Final Order was based on an incorrect interpretation of Hawaii Administrative Rules (**HAR**) § 16-89-60(5) (2013);

(3) the hearing officer erred in sustaining the DCCA's objection to Martinez's testimony regarding past disclosures to the Board and in granting the DCCA's motion to quash her subpoena duces tecum; and

(4) the DCCA improperly submitted to the Board evidence of a 2005 complaint against Martinez, which alleged that she failed to report necessary information to the Board.

## I. BACKGROUND

This is a secondary appeal from the circuit court's review of the Board's Final Order, which affirmed the Board's finding that Martinez violated Hawaii Revised Statutes (**HRS**) § 457-12(a)(6) (2013 Repl.).[3]

Martinez was licensed by the Board as a registered

---

[2] For clarity, we have consolidated those points of error that raise duplicative arguments.

[3] HRS § 457-12(a)(6) provides:

> **§ 457-12 Discipline; grounds; proceedings; hearings.** (a) In addition to any other actions authorized by law, the board shall have the power to deny, revoke, limit, or suspend any license to practice nursing as a registered nurse or as a licensed practical nurse applied for or issued by the board in accordance with this chapter, and to fine or to otherwise discipline a licensee for any cause authorized by law, including but not limited to the following:
>
> . . . .
>
> (6) Unprofessional conduct as defined by the board in accordance with its own rules[.]

2

nurse in Hawai'i on June 8, 2004. In her June 25, 2004 "Application for License (Without Examination) -- Nurse" (**2004 Application**), which was submitted to the Board, Martinez listed Utah, Georgia, and New York in the section of the application requiring the applicant to identify "Other State Licenses." Martinez also marked "NO" in the box next to the question:

> 5) "Are you presently being investigated or is any disciplinary action pending against you?
>
> *If "YES", specify all states where action was or may be imposed. Arrange to have certified documents from each state in which disciplinary action or investigation occurred or is pending against you sent <u>directly</u> to the Board."*

(Format altered.)

On June 4, 2009, Martinez's employer AB Staffing Solutions (**AB Staffing**) reported Martinez to the Board for "fraudulent activity." In its letter to the Board, AB Staffing claimed that when Martinez applied for employment with the company in 2008, she reported on her application (**AB Staffing Application**) that she was licensed to practice nursing in Hawai'i but did not indicate that she was licensed to practice in other states, nor did she indicate whether she had disciplinary actions taken against her nursing licenses. AB Staffing reported that it later discovered that Martinez was licensed to practice in several other states and had disciplinary actions taken against her in New York, Pennsylvania, and Washington.

On June 30, 2010, the DCCA filed a petition for disciplinary action against Martinez (**Petition**). The Petition alleged that Martinez violated HRS § 457-12(a)(6)[4], -12(a)(8) (2013 Repl.), and -12(a)(11)[5] (Supp. 2015), when she failed to

---

[4] The DCCA's Petition mistakenly cites to HRS § 457-12(6) instead of HRS § 457-12(a)(6).

[5] HRS § 457-12(a)(8) and HRS § 457-12(a)(11) provide:

§ **457-12 Discipline; grounds; proceedings; hearings.** (a) In addition to any other actions authorized by law, the board shall have the power to deny, revoke, limit, or suspend any license to practice nursing as a registered nurse or as a licensed practical nurse applied for or issued by the board in accordance with this chapter, and to fine or

(continued...)

3

disclose in her 2004 Application that she had disciplinary actions taken against her in other states and when she failed to disclose in her AB Staffing Application that she was licensed to practice in other states.

On December 6, 2010, the DCCA filed an amended petition (**Amended Petition**), which withdrew the allegations pertaining to Martinez's 2004 Application. Instead, the Amended Petition alleged Martinez violated HRS § 457-12(a)(6)[6] when she failed to disclose on her AB Staffing Application that she was licensed to practice in other states and that she had disciplinary actions taken against her other nursing licenses in those states. The Amended Petition also included allegations that Martinez had her license suspended in New York, Pennsylvania, and Washington.

On February 12, 2013, the Board's hearing officer held an administrative hearing on the Amended Petition. At the hearing, the hearing officer had an opportunity to rule on Martinez's subpoena duces tecum, which sought reports and files relating to a 2005 "Request for Investigation" (**2005 Complaint**).[7] Martinez alleges that the 2005 Complaint initiated a 2006 DCCA investigation into the following allegations against her:

Fraud or deceit in procuring or attempting to procure a

_____

[5](...continued)
to otherwise discipline a licensee for any cause authorized by law, including but not limited to the following:

. . . .

(8)     Revocation, suspension, limitation, or other disciplinary action by another state of a nursing license for reasons as provided in this section;

. . . .

(11)    Submitting to or filing with the board any notice, statement, or other document required under this chapter, which is false or untrue or contains any material misstatement of fact, including a false attestation of compliance with continuing competency requirements[.]

[6]     Again, the DCCA's Amended Petition mistakenly cites to HRS § 457-12(6) instead of HRS § 457-12(a)(6).

[7]     Martinez's opening brief alleges that the 2005 Complaint was made by her former employer, the Queen's Medical Center.

4

license to practice nursing as a registered nurse; unprofessional conduct; . . . submitting to or filing with the board any notice, statement or document required under this [HRS chapter 457], which is false or untrue or contains any material misstatement of fact[;]

and

Failure to report to board any disciplinary action taken against the licensee in another jurisdiction within thirty days after the disciplinary actions becomes final. Disciplined in Washington state, New York, Pennsylvania for false verification that she [was] successfully granted [an] MSN [Master of Science in Nursing degree] and passed the Adult Nurse Practitioner Examination to qualify for APRN [advanced practice registered nurse] license with prescriptive authority.

Martinez's subpoena duces tecum sought "[r]eports, correspondence and files" relating to the DCCA's investigation.

The DCCA orally moved to quash Martinez's subpoena duces tectum on the grounds that the evidence requested was not relevant to the proceedings before the hearing officer. The DCCA argued that the requested evidence pertained to a closed DCCA case where the DCCA investigated allegations that Martinez "failed to notify the [Board] of her prior disciplinary actions in her application . . . ." The DCCA maintained that the evidence was not relevant to the proceedings before the hearing officer because "there is no allegation regarding [Martinez] failing to disclose anything, any disciplinary action to the [Board] in her application for the [Board]."

In response, Martinez argued that the evidence was relevant to show that, although a complaint was filed in 2005 and an investigation started against Martinez in 2006, "[n]othing ever came of that hearing or never [sic] came of those allegations, and yet the same allegations are being brought up today in 2009 . . . based on [Martinez's application to] AB Staffing." The hearing officer agreed with the DCCA, however, and ruled that the evidence was not relevant to the DCCA's charges against Martinez.

On March 12, 2013, the Board's hearing officer issued its "Hearings Officer's Findings of Fact, Conclusion of Law, and Recommended Order" (**FOF/COL/Order**), which concluded that Martinez violated HRS §§ 457-12(a)(6) and -12(a)(8). The FOF/COL/Order

5

also recommended dismissal of the HRS § 457-12(a)(11) charge against Martinez, finding that the

> [2004 Application] . . . appears to require disclosure of prior disciplinary actions only when the applicant's license had been subject to disciplinary action by the <u>Hawaii Board</u>. . . or the applicant was <u>presently</u> the subject of an investigation or disciplinary action . . . , neither of which has been established here.

(Footnote omitted.)

On March 14, 2013, the hearings officer amended its FOF/COL/Order in its "Hearings Officer's Amended Recommended Order" (**Amended Order**) to exclude its previous finding that Martinez violated HRS § 457-12(a)(8) and its recommendation to dismiss the HRS § 457-12(a)(11) charge. Instead, the Amended Order determined:

> The evidence proved that [Martinez] engaged in unprofessional conduct when she failed to report to the Board the disciplinary actions taken against her nursing licenses in New York, Pennsylvania, and Washington, and by wrongfully taking a controlled medication from her employer's premises as determined by the New York licensing authority, in violation of HRS §457-12(a)(6).[8]

---

[8] The Amended Order quoted HAR § 16-89-60(5) and -(7)(D)(2013) in the section entitled, "Conclusions of Law." Although not expressly stated, it can be reasonably inferred that the hearing officer included these administrative rules in its order to provide legal support for its determination that Martinez violated HRS § 457-12(a)(6). HAR § 16-89-60 provides, in relevant part:

> § 16-89-60 <u>Types of unprofessional conduct.</u> The types of unprofessional conduct covered in this provision shall include, but are not limited to, the following:
>
> . . . .
>
> (5)    Failing to report to the board any revocation, suspension, or other disciplinary actions against the applicant or licensee by another state or jurisdiction of the United States for any act or omission which would constitute unprofessional conduct;
>
> . . . .
>
> (7)    Engaging in any act inconsistent with the practice of nursing as defined in section 457-2, HRS, for that of a licensed practical nurse or a registered nurse including:
>
> . . . .
>
> (D)    Unauthorized use or removal of drugs, supplies, or property from a patient or
>
> (continued...)

The hearings officer "recommend[ed] that the Board find and conclude that the preponderance of the evidence established that [Martinez] violated HRS § 457-12(a)(6)."

On April 12, 2013, the DCCA filed "[DCCA's] Statement in Support of Hearings Officer's [FOF/COL/Order] and [Amended Order] Filed on March 14, 2013" (**Statement in Support**). The DCCA attached the 2005 Complaint to its Statement in Support. On March 27, 2013, Martinez submitted her written "Exceptions to Hearings Officer's [FOF/COL/Order] and [Amended Order]."

On April 4, 2014, the Board issued its Final Order, "adopt[ing] the Hearings Officer's recommended decision as the Board's Final Order." The Board concluded that Martinez violated HRS § 457-12(a)(6). The Board ordered, *inter alia*, that Martinez's license to practice nursing in Hawai'i be suspended for three years and that she complete education courses to be determined by the Board.

On May 6, 2014, Martinez appealed the Board's Final Order to the circuit court. The circuit court held an oral argument on November 21, 2014. On February 17, 2015, the circuit court entered its Order, affirming the Board's Final Order.

On March 5, 2015, Martinez filed a notice of appeal to this court.

## II.  STANDARD OF REVIEW

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which [the appellate] court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) [(2012 Repl.)] to the agency's decision.

HRS § 91-14, entitled "Judicial review of contested cases," provides in relevant part:

   (g)   Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the

---

[8](...continued)

health care facility, institution or other work place location, or diverting or attempting to divert drugs or controlled substances for unauthorized use or appropriating money, supplies, or equipment[.]

substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1)     In violation of constitutional or statutory provisions; or

(2)     In excess of the statutory authority or jurisdiction of the agency; or

(3)     Made upon unlawful procedure; or

(4)     Affected by other error of law; or

(5)     Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6)     Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6).

United Pub. Workers, AFSCME, Local 646, AFL-CIO, v. Hanneman, 106 Hawai'i 359, 363, 105 P.3d 236, 240 (2005) (format altered) (citing Paul's Elec. Serv., Inc. v. Befitel, 104 Hawai'i 412, 416, 91 P.3d 494, 498 (2004)).

"An agency's conclusions of law are reviewed de novo, while an agency's factual findings are reviewed for clear error[.]" Del Monte Fresh Produce (Hawaii), Inc. v. Int'l Longshore & Warehouse Union, Local 142, AFL-CIO, 112 Hawai'i 489, 499, 146 P.3d 1066, 1076 (2006) (citations omitted). A finding of fact is clearly erroneous when "(1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made." Id. (internal quotations omitted) (quoting In re Water Use Permit Applications, 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000)). "Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Del Monte, 112 Hawai'i at 499, 146 P.3d at 1076 (internal quotations omitted) (quoting In re Water Use Permit, 94 Hawai'i at 119, 9 P.3d at 431)).

## III.  DISCUSSION

Martinez contends the Amended Pleading provided insufficient notice of the DCCA's charges against her.  "Modern judicial pleading has been characterized as simplified notice pleading.  Its function is to give opposing parties fair notice of what the claim is and the grounds upon which it rests." Perry v. Planning Comm'n of Hawaii Cty., 62 Haw. 666, 685, 619 P.2d 95, 108 (1980) (internal quotation marks and ellipses omitted) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see Adams v. Dole Food Co., Inc., 132 Hawai'i 478, 488, 323 P.3d 122, 132 (App. 2014) ("Hawaii's rules of notice pleading require that a complaint set forth a short and plain statement of the claim that provides defendant with fair notice of what the plaintiff's claim is and the grounds upon which the claim rests." (quoting Tokuhisa v. Cutter Mgmt. Co, 122 Hawai'i 181, 192, 223 P.3d 246, 257 (App. 2009))).  The Hawai'i Supreme Court has suggested, however, that pleadings in administrative proceedings may be subject to a more lenient standard.  See Perry, 62 Haw. at 685-86, 619 P.2d at 108.

In Perry, applicants sought a special permit to use approximately sixty-five acres of land in Puna, Hawai'i for "quarrying purposes." Id. at 669, 619 P.2d at 99.  Because the subject land was within an "agricultural" district, the applicant was required to receive approval from both the County of Hawai'i Planning Commission (**Planning Commission**) and the State Land Use Commission (**LUC**). Id.  The Planning Commission approved the permit, but limited the "quarry facilities and equipment to a portable crusher, a portable office and toilet, and a small storage building[.]" Id. at 671, 619 P.2d at 100.  The LUC then approved the special permit without further modification. Id. at 672, 619 P.2d at 101.

Owners of the property adjoining the proposed quarry site then appealed the Planning Commission and LUC's decision to the circuit court, arguing, inter alia, that "the granted permit exceeded the scope of the application[.]" Id.  The circuit court, siding with the owners, concluded "[t]hat the inclusion of screening and crushing operations and a cement batching plant as

approved uses under the special permit approved by the [LUC] was beyond the scope of the original application."[9]  Id. at 684, 619 P.2d at 107.

The Hawai'i Supreme Court was tasked with determining the applicable standard in administrative pleadings.  In formulating its opinion, the supreme court acknowledged the position in other jurisdictions that pleadings in administrative proceedings are subject to a more lenient standard than pleadings before a court.  Id. at 685-86, 619 P.2d at 108.  The supreme court cited to an Illinois appellate court case that held the function of written charges, in the context of an employee discharge proceeding before an administrative agency, was to "simply apprise the accused of the charges against him with reasonable certainty so to enable him to intelligently prepare his defense."  Id. (quoting Hall v. Lyons, 389 N.E.2d 1309, 1314 (Ill. Ct. App. 1979)).  The supreme court noted further that "[f]ederal courts tend to follow an even less formal approach to administrative pleadings" than the standard articulated in the Illinois case and cited to a federal opinion that determined:

> Pleadings in administrative proceedings are not judged by the standards applied to an indictment at common law. It is sufficient if the respondent "understood the issue" and "was afforded full opportunity" to justify its conduct during the course of the litigation. Thus, "the question on review is not the adequacy of the pleading but is the fairness of the whole procedure."

Perry, 62 Haw. at 685-86, 619 P.2d at 108 (ellipses omitted) (quoting Aloha Airlines, Inc. v. Civil Aeronautics Bd., 598 F.2d 250, 262 (D.C. Cir. 1979)).

Noting that the evidence in the record revealed an "awareness that the proposed use extended beyond the extraction of rock from the earth[,]" the supreme court in Perry ultimately

---

[9]  The Hawai'i Supreme Court noted a discrepancy between the circuit court's determination and the permit's actual breadth. Perry, 62 Haw. at 684, 619 P.2d at 107. The pertinent permit condition read, "8. That facilities be limited to: (a) portable crusher, (b) portable office and toilet, and (c) small storage building." Id. Given that the permit did not include language pertaining to a "cement batching plant," as the circuit court's decision suggested, the supreme court confined its decision "to whether the inclusion of screening and crushing operations within the scope of the permitted use vitiated the permit." Id. at 684-85, 619 P.2d at 107.

concluded that the circuit court's holding (*i.e.*, that the permit allowing the screening and crushing of rock was outside the scope of the quarry application) was "contrary to prevailing principles of administrative law that regard such formalism with disfavor." Perry, 62 Haw. at 685-86, 619 P.2d at 107-08. The supreme court held that its "review of the record indicate[d] [the owners] were apprised of what was being sought, they were provided full opportunity to be heard in opposition, and the procedures were essentially fair." Id. at 686, 619 P.2d at 108. The supreme court reversed the circuit court's ruling and held that applicant's application did not offend administrative pleading standards. Id.

Unlike the facts in Perry, the DCCA's Amended Petition failed to sufficiently satisfy Hawai'i's administrative pleading requirements. The DCCA's Amended Petition alleged that Martinez violated HRS § 457-12(6) when she failed to list on her AB Staffing Application that she was licensed to practice nursing in other states and when she failed to answer the portion of the application that asked whether she ever had disciplinary action taken against her license. Notably, the Amended Petition did not include any allegations pertaining to Martinez's failure to report information to the Board. Nevertheless, instead of limiting its findings to Martinez's disclosures to her former employer, AB Staffing, the hearing officer's FOF/COL/Order and Amended Order found that Martinez violated HRS § 457-12(6) "when she failed to report to the Board the disciplinary actions taken against her nursing licenses in New York, Pennsylvania, and Washington[.]" The hearing officer's decision was then adopted by the Board and affirmed by the circuit court.

Given that Martinez was found to have violated HRS § 457-12(a)(6) based on facts not alleged in the DCCA's Amended Petition, Martinez could not have intelligently prepared a defense because she was not apprised of the charges being brought against her. Further compounding the inadequacy of the DCCA's Amended Petition and the unfairness of the administrative procedural history as a whole, the DCCA's original Petition had

11

included allegations of Martinez's failure to report to the Board, which were subsequently removed from the Amended Petition.

Moreover, at the hearing before the hearing officer, the DCCA specifically maintained it was not bringing charges against Martinez for failing to disclose information to the Board. The DCCA announced its position when arguing in opposition to Martinez's subpoena duces tecum, which sought the results of a 2006 DCCA investigation into previous allegations that Martinez failed to report necessary information to the Board. During the hearing, the DCCA orally moved to quash the subpoena duces tecum on relevancy grounds, arguing that the results of an investigation were irrelevant to the issue at hand—whether Martinez failed to report information to her former employer, AB Staffing. In support of its motion to quash, the DCCA conceded that "there [was] no allegation regarding [Martinez] failing to disclose anything, any disciplinary action to the [Board] in her application for the [Board]."

Thus, unlike the facts in Perry, nothing in the record indicates that Martinez was aware, or should have been aware, that the DCCA was bringing charges against her for allegedly failing to report information to the Board. In conclusion, a review of the record indicates that the Board's procedure was far from fair and, therefore, the Amended Petition failed to satisfy Hawai'i's administrative pleading standard.[10]

_____

[10] Our holding that the Amended Petition violated Hawai'i's administrative pleading standard is limited to the Board's finding that Martinez violated HRS § 457-12(a)(6) when she failed to report necessary information to the Board. See HAR § 16-89-60(5) (providing that "unprofessional conduct" includes failing to report to the Board any revocation, suspension, or disciplinary actions against applicant by another state). To the extent that the Amended Petition contained allegations that Martinez removed controlled medication from her employer's premises in New York, we hold that the Board's finding that Martinez violated HRS § 457-12(a)(6) by "wrongfully taking controlled medication from her employer's premises as determined by the New York licensing authority" was not outside the scope of the Amended Petition. See HAR § 16-89-60(7)(D) (providing that "unprofessional conduct" includes the "[u]nauthorized use or removal of drugs, supplies, or property from a patient or health care facility, institution or other work place location[.]).

Furthermore, because we hold that the Amended Petition failed in part to satisfy Hawai'i's administrative pleading requirements and because Martinez presents no argument on appeal that would affect the Board's finding

(continued...)

## IV.  CONCLUSION

Therefore, the "Order Affirming Board of Nursing's Final Order" and "Judgment," both entered on February 17, 2015 in the Circuit Court of the First Circuit, are vacated and this case is remanded to the Board of Nursing for proceedings consistent with this Opinion.

On the briefs:

Lorrin A. Kau
for Respondent-Appellant-
Appellant.

Diane R. Corn
for Petitioner-Appellee-
Appellee.

_____

[10](...continued)
that she violated HAR § 16-89-60(7)(D), we need not address Martinez's remaining points of error.