**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000739
17-FEB-2022
07:57 AM
Dkt. 125 MO**

NO. CAAP-16-0000739

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, DEPARTMENT OF PUBLIC SAFETY,
Employer-Appellant-Appellee,
v.
RONALD N. NAUMU, Employee-Appellee-Appellant,
and
MERIT APPEALS BOARD, Agency-Appellee-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 15-1-2432)


MEMORANDUM OPINION
(By: Hiraoka, Presiding Judge, Nakasone and McCullen, JJ.)


The procedural history of this agency appeal is long and complex, spanning over a decade of prior proceedings arising out of Employee-Appellant Ronald N. Naumu's (**Naumu**) 2001 employment termination. Naumu appealed to the Merit Appeals Board (**MAB**) in 2002, and an appeal hearing was held in 2006. Following the 2006 MAB hearing, the case subsequently went back and forth between the MAB and the circuit court for the next ten years, until a final judgment was entered in 2016. Four appeal hearings were conducted before the MAB: in 2006, 2010-11, 2013, and 2015. There were five separate Findings of Fact and Conclusions of Law (**FOF-COL**) MAB decisions, issued in 2007, 2009, 2012,[1] 2013 and 2015. Interspersed with the four MAB appeal hearings, were four agency appeals to the circuit court, filed in three different case numbers (Civil No. 12-1-0331-02; Civil No.

_____

[1] The 2012 FOF-COL was as a result of the MAB granting a motion for reconsideration of its 2009 decision.

13-1-3353-12; and Civil No. 15-1-2432-12), taken in 2007, 2012, 2013, and 2015.  The agency appeals to the circuit court resulted, in turn, in three remands to the MAB:  the 2007 remand resulting in a 2010-11 re-hearing, 2012 remand resulting in 2013 re-hearing, and 2015 remand resulting in a 2015 "limited"[2] hearing.  Following the 2015 limited hearing before the MAB, Naumu filed his last agency appeal to the circuit court, which was dismissed in 2016.  After the September 30, 2016 Final Judgment was entered, Naumu timely filed this appeal on October 28, 2016.[3]

Naumu appeals from the (1) Order Remanding Employer-Appellant State of Hawaiʻi, Department of Public Safety's (**DPS**) Agency Appeal Filed February 3, 2012, filed November 28, 2012 in Civil No. 12-1-0331-02 (**2012 Remand Order**) by the Circuit Court of the First Circuit (**Circuit Court**);[4] (2) Order Denying Employee-Appellee Ronald N. Naumu's Motion for Relief from "Order Employer-Appellant State of Hawaii, Department of Public Safety's Agency Appeal filed February 3, 2012," Filed November 28, 2012, filed March 3, 2014 in Civil No. 12-1-0331-02 (**2014 Order Denying Rule 60(b) Relief**) by the Circuit Court; (3) Findings of Fact, Conclusions of Law and Order (**2013 FOF-COL**) dated November 25, 2013 in MAB Case No. 26; (4) Order Remanding Employee-Appellant Ronald N. Naumu's Agency Appeal Filed December 24, 2013, filed March 6, 2015 in Civil No. 13-1-3353-12 (**2015 Remand Order**) by the Circuit Court; (5) Amended Findings of Fact, Conclusions of

---

[2]     As explained <u>infra</u>, the 2015 hearing was limited to reviewing whether Naumu's dismissal from employment in the 2013 FOF-COL should be modified.

[3]     On October 22, 2020, after determining that this court did not have jurisdiction over the 2012 and 2014 Orders that Naumu included in his appeal, we issued an Order of temporary remand to the Circuit Court in Civil No. 12-1-0331-02, for entry of a judgment on the 2012 order.  On October 30, 2020, the Circuit Court entered its Final Judgment in Civil No. 12-1-0331-02.  In Civil No. 13-1-3353-12, a final judgment was not required because the 2015 Order that Naumu included in this appeal was an interlocutory order that was brought up for review with the Final Judgment in Civil No. 15-1-2432-12.  <u>See</u> <u>Ueoka v. Szymanski</u>, 107 Hawaiʻi 386, 396, 114 P.3d 892, 902 (2005) ("An appeal from a final judgment 'brings up for review all interlocutory orders not appealable directly as of right which deal with issues in the case.'" (quoting <u>Pioneer Mill Co., Ltd. v. Ward</u>, 34 Haw. 686, 694 (1938)).

[4]     The Honorable Rhonda A. Nishimura presided.  The Honorable James H. Ashford signed the October 30, 2020 Final Judgment in Civil No. 12-1-0331-02.

Law, Decision and Order dated November 19, 2015 in MAB Case No. 26 (**2015 FOF-COL**); (6) Order Dismissing Employee-Appellant Ronald N. Naumu's Agency Appeal Filed December 21, 2015, filed September 19, 2016 in Civil No. 15-1-2432-12 (**2016 Order Dismissing Appeal**) by the Circuit Court; and (7) Final Judgment filed September 30, 2016 in Civil No. 15-1-2432-12 (**2016 Final Judgment**) by the Circuit Court.

On appeal, Naumu contends that the Circuit Court erred as follows:[5] (1) in its 2012 Remand Order by vacating the MAB's January 11, 2012 FOF-COL (**2012 FOF-COL**) and remanding the case to the MAB for a full evidentiary re-hearing; (2) in its 2014 Order Denying Rule 60(b) Relief by dismissing Naumu's motion brought under Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 60(b); (3) in its 2015 Remand Order by finding that Naumu's dismissal from DPS was substantiated or partially substantiated by the evidence provided to the MAB; (4) by rejecting Naumu's claim that his due process rights were violated during the 2015 MAB hearing where (a) the MAB denied Naumu's pre-hearing request to conduct additional discovery and present new evidence during the September 24, 2015 MAB hearing, and (b) only two out of three MAB members presided over that hearing; and (5) in its 2016 Order Dismissing Appeal and the MAB erred in its 2015 FOF-COL, by concluding that modifying DPS's termination of Naumu was not warranted or just under the circumstances.

We hold that the Circuit Court did not err in its 2012 Remand Order remanding the case for a full evidentiary re-hearing

---

[5] Naumu's Points of Error section does not comply with Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4), as none of the five points include quotations of the findings or conclusions challenged, or reference to "appended findings and conclusions." HRAP Rule 28(b)(4)(C). Naumu's points do not include record references setting forth "where in the record the alleged error occurred" and "where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency." HRAP Rule 28(b)(4). Instead, some of the material required to be in the points of error section appears instead in the "Discussion" section, which appears to be the "argument" section required by HRAP Rule 28(b)(7). While points not presented in accordance with HRAP Rule 28(b)(4) may be disregarded, to the extent the "remaining sections of the brief provide the necessary information to identify [Naumu's] argument," we will address the merits. Marvin v. Pflueger, 127 Hawaiʻi 490, 496, 280 P.3d 88, 94 (2012). Naumu's counsel is cautioned to comply with this requirement.

before the MAB, in its 2014 Order Denying Rule 60(b) Relief, and in its 2015 Remand Order upholding the 2013 FOF-COL. With respect to the latest MAB appeal hearing in 2015, we hold that the Circuit Court did not violate Naumu's due process rights by: (1) affirming the MAB's denial of Naumu's request to conduct additional discovery and to present evidence; and (2) affirming that the MAB was permitted to conduct the hearing with only two members rather than the full three-member board presiding. We also hold that the Circuit Court did not err in affirming the MAB's 2015 denial of any modification to the MAB's 2013 decision to affirm Naumu's discharge. We therefore affirm.

## I. BACKGROUND

In 2001, Naumu was employed at Oahu Community Correctional Center (**OCCC**) as a Captain, Adult Corrections Officer (**ACO**) VI, with DPS. Naumu was the Watch Commander of the Third Watch, which is from 2:00 p.m. to 10:00 p.m., at OCCC. The duties of a Watch Commander are to oversee, and be responsible for, the operations of the entire OCCC facility. The chain of command at OCCC, in descending order, is as follows: the Director, the Warden, the Deputy Warden, the Major or Chief of Security (**COS**), the Captains, and the Lieutenants.

### January 17, 2001 Inmate Escape

On January 17, 2001, during the Third Watch, inmate Kerbert Silva (**Inmate Silva**) escaped from the OCCC recreation field. Inmate Silva was eventually recaptured and returned to OCCC. Naumu was the Watch Commander on the Third Watch during Inmate Silva's escape.

As a result of the escape, DPS issued notices of investigation to Naumu, along with eight other ACOs. DPS requested the assistance of the National Institute of Corrections (**NIC**), a subdepartment of the U.S. Department of Justice, with the investigation and to conduct an audit of the security procedures at OCCC. The NIC's March 16, 2001 audit report highlighted various security deficiencies, such as in the OCCC

Holding Unit.[6]  On March 16, 2001, OCCC COS John Manumaleuna (**COS Manumaleuna**) met with Naumu and the rest of the Third Watch team to inform them of the NIC audit findings, including concerns with the Holding Unit, such as "doors open, gates not secured, sergeant not cooperative with NIC auditors by not answering questions (attitude)."

### March 21, 2001 Inmate Escape

On March 21, 2001, Inmate Silva and two other inmates escaped from OCCC during the Third Watch.  Naumu was on duty as Watch Commander during the Third Watch.  ACO Sergeant Ben Almadova (**Sgt. Ben Almadova**) worked the Third Watch and was assigned to the Holding Unit as the "sergeant in charge," which is an essential, required post.  On the night of the March 21 escape, Sgt. Ben Almadova asked Naumu if he and his wife, ACO Sergeant Pamela Almadova (**Sgt. Pamela Almadova**), who was on duty at the time, could take their meal break together (collectively **the Almadovas**).  Naumu allowed the Almadovas to take their meal break pursuant to an "unwritten" OCCC policy (**Chow Policy**) that allowed ACOs to leave the facility for twenty minutes to purchase a meal and return to OCCC during their forty-minute meal break.

Various activities occurred at OCCC during the evening of March 21.  Some of the scheduled events included the OCCC talent show; inmate transfers for medical treatment; and scheduled inmate phone calls.  These activities required that the ACOs make checks that there was sufficient manpower to handle the security needs in the Holding Unit and other OCCC modules.

Prior to leaving OCCC for meal break, Sgt. Ben Almadova instructed ACO Thomas Lepere (**ACO Lepere**) to keep the first floor inmates locked down.  Sgt. Ben Almadova further instructed ACO Lepere to allow inmate Paul Damas (**Inmate Damas**) to make a regularly scheduled phone call.  The Almadovas left OCCC at approximately 6:30 p.m.

---

[6]  The Holding Unit houses inmates who cannot be housed with the OCCC general population because of poor behavior, protective custody, classification as maximum security, or inability to get along with the other inmates.

At around 7:15 p.m., ACO Lepere let Inmate Damas out of his cell for his routine phone call. ACO Lepere failed to properly lock the cell-door control panel box, which led to Inmate Damas accessing the control panel and releasing Inmate Silva and inmate Eric Vance (**Inmate Vance**) from their cells. Inmates Silva and Vance overpowered ACO Lepere and locked him into another inmate's cell. Inmates Damas, Vance, and Silva then escaped from the Holding Unit but were eventually captured. At the time of the escape, Naumu was dealing with a malfunctioning lock in OCCC Annex 2. The Almadovas returned to OCCC a little after 8:00 p.m.

At approximately 1:00 a.m., Sgt. Ben Almadova ran into Naumu as they were leaving OCCC. Sgt. Ben Almadova apologized for taking such a long break and explained that he and Sgt. Pamela Almadova left to pick up their new car. This was the first time that Naumu learned about where the Almadovas went on their meal break.

**DPS Investigation of the March 21 Inmate Escape**

Following the March 21 inmate escape, the DPS Internal Affairs Office (**Internal Affairs**) conducted a formal investigation of the incident. Pending the investigation, Naumu was placed on thirty days of administrative leave without pay by COS Manumaleuna. DPS Internal Affairs Investigator Andrew Glushenko (**Investigator Glushenko**) conducted the investigation and wrote the follow-up reports on Naumu (Case No. IA-010331), Sgt. Ben Almadova (Case No. IA-010330), and ACO Lepere (Case No. IA-010324) for the investigation. In the April 24, 2001 follow-up report, the DPS investigation conducted by Investigator Glushenko concluded that the primary cause of the March 21 inmate escape was the failure of ACO Lepere to follow "precautionary security procedures in bringing inmate Paul Damas out from his cell" for his phone call. However, the report also cited Naumu's failure to adhere to the OCCC security procedures and policies as "probably contribut[ing] towards the initial success of the escape attempts," and cited Naumu's discretionary errors in judgment regarding "proper security presence at OCCC" and

sufficient manpower. The report concluded that Naumu violated seven Articles in the DPS Standards of Conduct.[7]

With regard to the Chow Policy, the April 24 follow-up report concluded that the Chow Policy was a "'discretionary' policy that was delegated to the Watch Commanders . . . that allowed some ACO's to leave the facility for their meal breaks, at the sole discretion of the Watch Commander." The report stated that the investigation revealed that "there is no such written policy or contract policy that allows an ACO a maximum time limit of 45 minutes for his meal break, and that an 'arbitrary' policy that can be loosely applied by superiors places a 'flexible' time limit of 20 minutes for a scheduled meal break . . . ." The report concluded that while Naumu claimed that this was part of a written directive from a former OCCC COS, the claim was disputed by the said former OCCC COS, and it was the investigator's belief that it remained uncertain "as to whether [Naumu] disregarded the 'unwritten' policy intentionally or whether his actions were a continuation of a 'past practice.'" The report concluded that Naumu was in violation of established procedures involving meal breaks for ACOs.

### Pre-Disciplinary Hearing and Pre-Dismissal Hearing[8]

On May 15, 2001, DPS held a pre-disciplinary due process hearing regarding Naumu's violation of the DPS Standards of Conduct. The hearing was conducted by DPS Administrative Hearings Officer Laurie Nadamoto (**Hearings Officer Nadamoto**).

On June 5, 2001, at Hearings Officer Nadamoto's request to have a record in writing, COS Manumaleuna wrote a memo summarizing the March 16, 2001 debriefing meeting regarding the NIC and its audit findings.

---

[7] The DPS Standards of Conduct are standards that the ACOs are held to at OCCC and other Hawaiʻi state correctional facilities.

[8] DPS has two levels of due process concerning dismissal of a DPS employee. The first is an initial **pre-disciplinary** hearing, described supra, for an employee being orally reprimanded. If the sanction, based on the pre-disciplinary meeting, is to discharge the employee, the employee is afforded a subsequent **pre-dismissal** hearing to argue why discharge may not be appropriate.

Hearings Officer Nadamoto met with DPS Director Ted Sakai (**Director Sakai**) to discuss Naumu's pre-disciplinary hearing and the March 21 escape. Hearings Officer Nadamoto and Director Sakai discussed what was presented at the hearing, the actions taken by Naumu, and what discipline would be imposed. Director Sakai informed Naumu, via letter, that he was being dismissed from his employment with DPS.

On July 9, 2001, DPS conducted a pre-dismissal hearing to afford Naumu an opportunity to contest the dismissal decision. DPS Departmental Hearing Officer Shelley Nobriga (**Hearings Officer Nobriga**) presided over the hearing. During this hearing, Naumu discussed and detailed the Chow Policy to Hearings Officer Nobriga.

Following the hearing, Hearings Officer Nobriga met with Director Sakai. Director Sakai was not aware of the Chow Policy and, subsequent to the March 21 inmate escape, he stopped the practice of allowing ACOs from leaving the prison campus to pick up meals. Hearings Officer Nobriga agreed with upholding the dismissal decision.

### August 13, 2001 Termination

On July 10, 2001, Hearings Officer Nobriga issued a letter to Naumu, signed by Director Sakai, indicating that based on the evidence Naumu presented at the pre-dismissal hearing, his dismissal was sustained. Naumu was officially terminated by DPS on August 13, 2001. The other ACOs involved in the incident were disciplined as well: ACO Lepere was suspended, as well as Sgt. Ben Almadova, but they were not discharged for the incident.

### Naumu's 2002 Appeal to the MAB

Naumu appealed his termination to the Civil Service Commission on January 15, 2002. Naumu's appeal was transferred to the MAB once the MAB replaced the Civil Service Commission.[9]

---

[9] We take judicial notice that in 2003, the MAB replaced the Civil Service Commission as the appellate body to hear appeals of this nature. See Hawaii Revised Statutes (**HRS**) § 76-47 (2000); Uyeda v. Schermer, 144 Hawaiʻi 163, 172, 439 P.3d 115, 124 (2019) ("A fact is a proper subject for judicial notice if it is common knowledge or easily verifiable.") (citing Almeida v. Correa, 51 Haw. 594, 605, 465 P.2d 564, 572 (1970) (brackets omitted)).

Naumu's first MAB hearing was held on August 31, 2006. Naumu, self-represented, appeared before MAB members David B. Knight (**Knight**), Chair, and Alvin M. Yoshimori (**Yoshimori**).[10] The MAB was asked to decide, "Did [DPS] comply with established laws, rules, policies, procedures and/or practices governing the dismissal process with respect to [Naumu]'s dismissal from employment with [DPS]?" In its FOF-COL (**2007 FOF-COL**), the MAB failed to reach a majority decision on the issue of whether DPS "carried its burden of substantiating or partially substantiating the reasons for" Naumu's dismissal, yet still found in favor of Naumu. The MAB ordered Naumu to be reinstated to his former position without loss of pay.

**DPS's 2007 Appeal to the Circuit Court**

On March 22, 2007, DPS appealed the MAB's 2007 FOF-COL to the Circuit Court (**Civ. No. 07-1-0533-03**).[11] DPS contended that the MAB made an error of law as to the MAB functioning with two Board members instead of three. Naumu was now represented by counsel. In its Decision and Order for Dismissal and Judgment filed October 23, 2007, the Circuit Court dismissed the appeal and remanded the case back to the full MAB for re-hearing on the grounds that as "the MAB failed to achieve a concurrence of a majority on the substantive merits of the case, (i.e. whether [DPS] carried its burden), there has not been a final order from which to appeal, hence depriving the [Circuit] Court of jurisdiction over the substantive merits of the underlying case." The Circuit Court noted that, as third MAB member Ted Hong, Esq. was appointed in early May 2007, the MAB had the "ability to decide cases before it without the possibility of another 'tie' result." A judgment was also entered on October 23, 2007. There was no appeal from that judgment.

---

[10] HRS § 26-5(c)(2000) requires that the MAB consist of three members; however, at the time of Naumu's first hearing, the MAB only had two members (Knight and Yoshimori). See HRS § 26-5(c).

[11] The Honorable Eden E. Hifo presided.

**The MAB's 2009 FOF-COL**

Following the Circuit Court's 2007 decision, Colleen Meyer (**Meyer**) replaced Ted Hong and was appointed in January 2009.  The MAB did not conduct a re-hearing on the case; however, Meyer reviewed all the submissions, documents, and audio-taped recordings of the August 31, 2006 hearing.  On October 29, 2009, the MAB issued a new FOF-COL (**2009 FOF-COL**) that granted Naumu's appeal and ordered his reinstatement to his former position without loss of pay.

DPS moved for reconsideration of the MAB's 2009 FOF-COL.  In its motion, DPS argued that the MAB should have held a re-hearing on the substantive merits of the case pursuant to the Circuit Court's order in Civ. No. 07-1-0533, instead of having Meyer review the prior proceedings.  The MAB granted the motion and held a full evidentiary hearing on September 30, 2010.  The hearing was continued to January 27, 2011, but due to Meyer's absence, the hearing was continued to July 28, 2011 to ensure that the full MAB would be in attendance.  By the conclusion of the hearing, DPS and Naumu presented their cases via documentary evidence, written evidence, and/or live testimony.  DPS called Hearings Officer Nadamoto, Hearings Officer Nobriga, and Director Sakai as witnesses; Naumu, who was self-represented, cross-examined each of DPS's witnesses and presented his own testimony.

On January 11, 2012, the MAB issued its 2012 FOF-COL finding in favor of Naumu, requiring his reinstatement in his former position without loss of pay.

**DPS's 2012 Appeal to the Circuit Court**

On February 3, 2012, DPS appealed the 2012 FOF-COL to the Circuit Court (**Civ. No. 12-1-0331-02**).[12]  DPS argued that the MAB improperly relied on HRS § 76-46[13] and "exceeded its

---

[12]     The Honorable Rhonda A. Nishimura presided.

[13]     HRS § 76-46 (2000) states,

> An appointing authority may discharge or demote any employee when the appointing authority considers that the good of the service will be served thereby. Discharges may be made only for such causes that will promote the

(continued...)

authority, pursuant to HAR § 14-25.1-4(y),[14] by substituting its judgment for that of the appointing authority ([DPS]) in granting Naumu's appeal and reversing the dismissal decision." (Footnote added).  DPS also argued that the MAB

> erred as a matter of law because it failed to address whether [DPS] substantiated or partially substantiated the reasons for Naumu's dismissal from employment, as required by HAR §14-25.1-4(x), instead commenting on the "credible evidence" or argument presented by Naumu in concluding that his termination was not fair and impartial, which is contrary to the MAB's findings that [DPS] substantiated or partially substantiated the reasons for Naumu's dismissal and that Naumu was afforded his due process rights.

The Circuit Court heard arguments for DPS's appeal on October 3, 2012.

On November 28, 2012, the Circuit Court issued its 2012 Remand Order vacating the MAB's 2012 FOF-COL and remanding the case back to the MAB for rehearing.  The Circuit Court found that:

> [the] language in certain Conclusions of Law in the Order may contain certain findings of fact, to wit, these conclusions speak to the credibility of evidence.  The Court finds that the Findings of Fact in the Order do not comport or address that part of the Conclusions of Law that speak to the credibility of certain evidence.

---

[13](...continued)
efficiency of government service.

Demotions or discharges shall be in accordance with procedures negotiated under chapter 89 or established under chapter 89C, as applicable.

[14]    Hawaii Administrative Rules (**HAR**) 14-25.1-4(y) (effective 2003) states in pertinent part:

In conducting its business and rendering its decision, the board shall serve as an appellate body and shall not impinge on the authority of the director in matters of policy, methodology, and administration.  All decisions and orders of the board shall be made in accordance with personnel laws, rules, policies, and practices, and accompanied by a technical explanation of the decision or order.  Every decision and order adverse to a party to the proceeding, rendered by the board, shall be in writing or stated in the record and shall be accompanied by separate findings of fact and conclusions of law.  If any party to the proceeding has filed proposed findings of fact, the board shall incorporate in its decision a ruling upon each proposed finding presented.  The findings and decisions of the board shall be final on all appeals, unless an appeal is taken pursuant to section 91-14, Hawaii Revised Statutes.

**The MAB's 2013 FOF-COL**

The MAB heard Naumu's appeal on remand on April 25, 2013; July 25, 2013; and August 27, 2013. At this time, the MAB consisted of entirely new members: Janice T. Kemp, Laurie Santiago (**Santiago**), and Valerie Pacheco (**Pacheco**). During the hearing, DPS called Hearings Officer Nadamoto, Hearings Officer Nobriga, and Director Sakai as witnesses.

On November 25, 2013, the MAB issued its FOF-COL (**2013 FOF-COL**) denying Naumu's appeal and finding in favor of DPS. The MAB found that DPS provided credible evidence that Naumu's termination "complied with all established laws, rules, policies, procedures and/or practices governing the dismissal process."

**Naumu's 2013 Motion for Relief and 2013 Appeal to the Circuit Court**

On December 24, 2013, Naumu appealed the MAB's 2013 FOF-COL to the Circuit Court (**Civ. No. 13-1-3353-12**). Contemporaneously, on December 26, 2013, in Civ. No. 12-1-0331-02, Naumu filed an HRCP Rule 60(b)[15] Motion for Relief from the

---

[15]     HRCP Rule 60(b) (2000) states in pertinent part:

**Rule 60. Relief from judgment or order.**

. . . .

        **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud

(continued...)

Circuit Court's "2012 Remand Order filed November 28, 2012." The motion was heard on February 13, 2014.

On March 3, 2014, the Circuit Court denied Naumu's Motion for Rule 60(b) Relief in Civ. No. 12-1-0331-02. In its 2014 Order Denying Rule 60(b) Relief, the Circuit Court ruled that:

> The propriety of filing the Motion for Relief under HRCP Rule 60(b)(6) is at issue when the Court had previously vacated the MAB's Findings of Fact, Conclusions of Law and Order, dated January 11, 2012 and remanded the case back to the MAB for a rehearing. Since the remand, the MAB conducted a rehearing, the parties submitted proposed Findings of Fact and Conclusions of Law, and the MAB issued Findings of Fact, Conclusions of Law and Order, dated November 25, 2013. In this instance, the Motion for Relief under HRCP Rule 60(b)(6) is not appropriate for the relief requested.
>
> . . . .
>
> Even assuming there were grounds for Employee-Appellee Naumu to file the motion under the guise of HRCP Rule 60(b)(6), it does not fit within the extraordinary circumstances that must exist for the basis of seeking relief under those grounds.

In Civ. No. 13-1-3353-12, the Circuit Court heard oral arguments regarding Naumu's appeal of the MAB's 2013 FOF-COL on February 13, 2015. On March 6, 2015, the Circuit Court issued the 2015 Remand Order. In the 2015 Remand Order, the Circuit Court found that:

> [I]n reviewing the [MAB's 2013 FOF-COL], the Court finds it is unclear whether the MAB considered the circumstances of the case so required the MAB to utilize its discretion to modify the action of [DPS] in dismissing Naumu from employment and whether the circumstances are such that any modification would be deemed just, as set forth in HRS §76-47(e) and HAR §14-25.1-4(x).[16]

(Footnote added). The Circuit Court remanded the case to the MAB for a "limited hearing to only consider the discrete issue of whether the circumstances of the case warrants the MAB to exercise its discretion to modify the dismissal action and whether the circumstances are such that any modification would be

---

[15](...continued)
upon the court. . . .

(Bolding in original).

[16]    HRS § 76-47(e) and HAR § 14-25.1-4(x) are set forth <u>infra</u>.

13

deemed just." The Circuit Court further instructed the parties that, "Upon remand for a limited hearing as to the discrete issue, the Hearings Officer has the discretion whether or not to allow the parties to recall witnesses and/or present new evidence." The Circuit Court further ordered the MAB to "modify the Findings of Fact and Conclusions of Law in its Order to address this particular issue."

### The MAB's 2015 FOF-COL

Pursuant to the Circuit Court's 2015 Remand Order, the MAB scheduled a limited hearing on remand for May 28, 2015. The MAB submitted a memorandum to inform the parties that the MAB determined that the parties would not be allowed to recall witnesses or present new evidence at the hearing, but could present written argument. Naumu objected to the MAB's decision to not recall witnesses or present new evidence at the hearing. The MAB reaffirmed its position.

The hearing was continued, by agreement, to September 24, 2015. At the September 24 hearing, the parties were informed that MAB Chair Paul K. W. Au (**Chair Au**) would not be present for the hearing and that the hearing would be conducted in front of the remaining two MAB members, Santiago and Pacheco, who, in Chair Au's absence, filled the role as Acting Chair. The parties were informed that if there was a tie in the MAB's decision, Chair Au would review the transcripts, records, and documents, and would "be the deciding vote." Upon Naumu's inquiry, Pacheco informed the parties that Chair Au would not be present at the hearing because "he was not present at the original [2013] hearing." Naumu objected and requested that the hearing be continued to allow the full MAB to be present. The two-member MAB deliberated and determined as follows:

> For the record, although the Merit Appeals Board didn't provide official notice that the two members who originally heard Mr. Naumu's appeal would hear his -- this remand, the Merit Appeals Board has decided that it was proper that the two original members hear the limited issue for the discrete issue of whether the circumstances of the case warrant the Merit Appeals Board, in exercising its discretion, to modify Naumu's dismissal and whether the circumstances are such that any modification would be deemed just.

> The parties will not be allowed to recall witnesses or present new evidence at the hearing. Parties may, but are not required, to submit written argument regarding their position to the Merit Appeals Board.
>
> In addition, each party may present oral argument to the Board. Written or oral argument should be limited to the issue remanded by the Court, and it should also be noted for the record that the letter dated May 5th, 2015, was signed on my behalf as Acting Chair, as was the May 18th letter so the parties were aware that I would be Acting Chair.
>
> If there is a split decision, then the Chairman, Mr. Au, will be tasked with reviewing the previous MAB records and recordings and providing the tie-breaking vote; therefore, this hearing will continue today, so thank you.

The hearing went forward as scheduled.

On November 19, 2015, the MAB issued its 2015 FOF-COL denying Naumu's appeal on remand and finding in favor of DPS. The MAB "majority" found that DPS "carried its burden of substantiating or partially substantiating the reasons for dismissal of [Naumu] from employment" and that "the MAB, in exercising its discretion, [would] not modify [Naumu's] dismissal because the circumstances presented [did] not require modification of [DPS]'s actions." The MAB determined that, in exercising its discretion, any modification of DPS's decision, pursuant to HRS § 76-47(e) and HAR § 14-25.1-4(x), "would not be proper or just under the circumstances."

### Naumu's 2015 Appeal to Circuit Court

On December 21, 2015, Naumu appealed the MAB's 2015 FOF-COL to the Circuit Court (**Civ. No. 15-1-2432-12**). Oral arguments were held on August 26, 2016, and the Circuit Court dismissed Naumu's appeal on September 19, 2016. The Circuit Court entered its Final Judgment in Civil No. 15-1-2432-12 on September 30, 2016, and Final Judgment in Civil No. 12-1-0331-02 on October 30, 2020.

### II. STANDARDS OF REVIEW

### A. Administrative Agency-Secondary Appeals

Review of a decision made by the circuit court upon its review of an administrative decision is a secondary appeal. Ahn v. Liberty Mut. Fire Ins. Co., 126 Hawaiʻi 1, 9, 265 P.3d 470, 478 (2011) (citation omitted). The circuit court's decision is reviewed de novo. Id. The agency's decision is reviewed under the standards set forth in HRS § 91-14(g). Id. HRS § 91-14(g) (1993) provides:

15

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6). Sierra Club v. Office of Planning, 109 Hawaiʻi 411, 414, 126 P.3d 1098, 1101 (2006) (citation, internal quotation marks and brackets omitted).

Watanabe v. Employees' Retirement Sys., 148 Hawaiʻi 508, 513, 479 P.3d 126, 131 (2021) (quoting Liberty Dialysis-Hawaii, LLC v. Rainbow Dialysis, LLC, 130 Hawaiʻi 95, 102-03, 306 P.3d 140, 147-48 (2013)).

### B. Agency's Findings of Fact and Conclusions of Law

> "An agency's conclusions of law are reviewed *de novo*, while an agency's factual findings are reviewed for clear error[.]" Del Monte Fresh Produce (Hawaii), Inc. v. Int'l Longshore & Warehouse Union, Local 142, AFL-CIO, 112 Hawaiʻi 489, 499, 146 P.3d 1066, 1076 (2006) (citations omitted)). A finding of fact is clearly erroneous when "(1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made." Id. (internal quotations omitted) (quoting In re Water Use Permit Applications, 94 Hawaiʻi 97, 119, 9 P.3d 409, 431 (2000)). "Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Del Monte, 112 Hawaiʻi at 499, 146 P.3d at 1076 (internal quotations omitted) (quoting In re Water Use Permit, 94 Hawaiʻi at 119, 9 P.3d at 431).

Martinez v. State Bd. of Nursing, 137 Hawaiʻi 83, 87-88, 365 P.3d 1012, 1016-17 (2016)(brackets and italics in original).

### C. Interpretation of Agency Rules

When interpreting agency rules, this court has stated that "[g]eneral principles of statutory construction apply," which requires "look[ing] first at an administrative rule's language." Liberty Dialysis-Haw[aii], LLC v. Rainbow Dialysis, LLC, 130 Hawaiʻi 95, 103, 306 P.3d 140, 148 (2013).

> If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning. While an agency's interpretation of its own rules is generally entitled to deference, this court does not defer to agency interpretations that are plainly erroneous or inconsistent with the underlying legislative purpose.

Id. (internal citations and quotation marks omitted).

Community Ass'n of Hualalai, Inc. v. Leeward Planning Comm'n, 150 Hawaiʻi 241, 252, 500 P.3d 426, 437 (2021).

### D. HRCP Rule 60(b)

A circuit court's decision on an HRCP Rule 60(b) motion is reviewed for abuse of discretion:

> [T]he trial court has a very large measure of discretion in passing upon motions under [HRCP] Rule 60(b) and its order will not be set aside unless we are persuaded that under the circumstances of the particular case, the court's refusal to set aside its order was an abuse of discretion.

PennyMac Corp. v. Godinez, 148 Hawaiʻi 323, 327, 474 P.3d 264, 268 (2020) (brackets in original) (quoting Hawaiʻi Hous. Auth. v. Uyehara, 77 Hawaiʻi 144, 147, 883 P.2d 65, 68 (1994)). "The burden of establishing abuse of discretion [in denying an HRCP Rule 60(b) motion] is on the appellant, and a strong showing is required to establish it." Id. (brackets in original) (quoting Ditto v. McCurdy, 103 Hawaiʻi 153, 162, 80 P.3d 974, 983 (2003)).

### III. DISCUSSION

#### A. Naumu's First Point of Error, 2012 Remand Order

Naumu contends that the Circuit Court erred in vacating the 2012 FOF-COL in its entirety and remanding the case to the MAB for a full evidentiary re-hearing. Naumu argues that the Circuit Court's "ruling that a lack of clarity between the findings of fact and conclusions of law was an insufficient basis

17

to remand the case for a full evidentiary re-hearing usurped the authority and purpose of the MAB and its full evidentiary hearings." Naumu maintains that because the MAB already conducted "a full evidentiary hearing where the MAB questioned the credibility of DPS's witnesses and the reasons for Naumu's termination," the Circuit Court should have instead had the MAB review the record to clarify and revise the 2012 FOF-COL, in lieu of a full hearing.

In the 2012 Remand Order, the Circuit Court vacated the 2012 FOF-COL because

> language in certain Conclusions of Law in the Order may contain certain findings of fact, to wit, these conclusions speak to the credibility of evidence. <u>The Court finds that the Findings of Fact in the Order do not comport or address that part of the Conclusions of Law that speak to the credibility of certain evidence</u>.

(Emphasis added). The Circuit Court's 2012 Remand Order does not reference which specific FOFs and COLs in the 2012 FOF-COL were at issue. Naumu also does not specifically identify the FOFs or COLs at issue; nor does Naumu address why the Circuit Court was wrong in concluding the FOFs did not comport with the COLs regarding credibility. Naumu does not present any counterargument that the FOFs and COLs were consistent with each other. Instead, Naumu only argues that the underlying evidence supported the MAB's ultimate decision ordering Naumu's reinstatement. Naumu's argument is unpersuasive.

Under HRS § 91-14(g) (1993), the Circuit Court may, *inter alia*, "reverse or modify" an agency's decision affected by a prejudicial error of law. "[A]n agency's findings should be 'sufficient to allow the reviewing court to track the steps by which the agency reached its decision.'" <u>Matter of Gas Co., LLC</u>, 147 Hawaiʻi 186, 202, 465 P.3d 633, 649 (2020) (quoting <u>Matter of Hawaiʻi Elec. Light Co., Inc.</u>, 145 Hawaiʻi 1, 11, 445 P.3d 673, 683 (2019)). "Where they are not, a 'remand pursuant to HRS § 91-14(g) is appropriate,' as the 'agency's findings are incomplete and provide no basis for review.'" <u>Id.</u> (quoting <u>Matter of Hawaiʻi Elec. Light Co., Inc.</u>, 145 Hawaiʻi at 24, 445 P.3d at 696)).

Here, the Circuit Court determined that there was a disconnect between the COLs regarding the "credibility of the evidence" and the absence of FOFs that addressed the "credibility" determinations.[17] The Circuit Court was not wrong in concluding that MAB's findings were insufficient to allow the Circuit Court to track how the MAB made its decision. See Matter of Gas Co., LLC, 147 Hawaiʻi at 202, 465 P.3d at 649. As the MAB's FOFs were inadequate to support or explain the COLs, it was within the discretion of the Circuit Court to vacate and remand the 2012 FOF-COL. See id.; see also Application of Kauai Elec. Div. of Citizens Utilities Co., 60 Haw. 166, 185, 590 P.2d 524, 538 (1978) (determining that remand is proper where an agency made "invalid, inadequate or incomplete findings.").

Naumu argues that if there was a lack of clarity regarding the FOFs and COLs in the 2012 FOF-COL, then the Circuit Court should have remanded the case for the MAB to modify the 2012 FOF-COL. Naumu does not provide any authority to support this contention. Pursuant to HRS § 91-14(g), there is no requirement that the Circuit Court must order an agency to modify the agency's order. Both DPS and Naumu also note, in their briefs, how the MAB composition had completely changed between

---

[17] The 2012 FOF-COL contained the following COLs that addressed credibility and the MAB's ultimate conclusion to grant Naumu's appeal:

> 6. Appellant did present credible evidence or argue convincingly that the [DPS] committed violations of established laws, rules, regulations, policies, procedures, and/or practices governing the dismissal of Appellant.
>
> 7. Conversely, Respondent [DPS], through its presentation, documentation, and the testimony of its witnesses, did not provide credible evidence that the termination of Appellant was fair and impartial.
>
> 8. In view of the above, the Board finds that the action taken by the Respondent [DPS] was without merit, thus the Appellant's appeal is GRANTED.

There were no corresponding findings or conclusions that supported the determination in COL 6, that DPS "committed violations" of any "laws, rules, regulations, policies, procedures, and/or practices" regarding Naumu's dismissal. There were also no corresponding findings or conclusions that explained COL 7's conclusion that DPS "did not provide credible evidence that the termination of [Naumu] was fair and impartial."

the 2010-11 hearing and the 2013 MAB hearing. At the October 3, 2012 hearing[18] on Naumu's appeal to the Circuit Court, the parties informed the Circuit Court that if the court decided to remand, the case would be heard by an entirely new MAB, which could pose difficulties. We note that it would be difficult, if not impossible, for an entirely new MAB to be bound by credibility determinations and COLs made by a prior MAB, and be tasked with crafting clarifying findings. Under these circumstances, the Circuit Court did not err in vacating the MAB's 2012 FOF-COL and remanding for a full evidentiary re-hearing. See Watanabe, 148 Hawaiʻi at 513, 479 P.3d at 131; Martinez, 137 Hawaiʻi at 87-88, 365 P.3d at 1016-17.

### B. Second Point of Error, 2014 Order Denying Rule 60(b) Relief

Naumu contends that the Circuit Court erred in denying his 2014 HRCP Rule 60(b) Motion for Relief because the record supported the MAB's decision to sustain Naumu's appeal and order his reinstatement. Naumu also argues that the 2013 FOF-COL issued by the MAB was the first time the MAB issued a thorough FOF, COL, and Order that included new language that was not contained in any of previous FOF-COLs.[19]

The Circuit Court did not err in denying Naumu's Motion for Relief. HRCP Rule 60(b)(6) provides that a court, "on motion and upon such terms as are just," may relieve a party from a final judgment, order, or proceeding "for any other reason justifying relief from the operation of the judgment." Essentially, "the primary purpose of the [HRCP Rule 60(b)(6)] motion 'is to authorize the reopening of a closed case or final order.'" PennyMac Corp., 148 Hawaiʻi at 328, 474 P.3d at 269

---

[18] Naumu did not request the October 3, 2012 hearing transcript, as required by HRAP Rule 10(b)(1)(A). The transcript of the October 3, 2012 hearing is only available in the record as an exhibit to Naumu's Reply to his Motion for Relief from "Order Remanding Employer-Appellant State of Hawaii, Department of Public Safety's Agency Appeal Filed February 3, 2012," Filed November 28, 2012, filed January 29, 2014.

[19] Naumu did not request the pertinent transcript, as required by HRAP Rule 10(b)(1)(A), of the February 13, 2014 hearing on the HRCP Rule 60(b) motion.

(quoting <u>Cho v. State</u>, 115 Hawaiʻi 373, 383, 168 P.3d 17, 27 (2007)). HRCP Rule 60(b)(6) "provides for extraordinary relief and is only invoked upon a showing of exceptional circumstances." <u>Uyehara</u>, 77 Hawaiʻi at 148, 883 P.2d at 69.

The record reflects that in the Order Denying Naumu's Motion for Rule 60(b) Relief, the Circuit Court stated that it was denying the motion as improper because the MAB had already conducted the rehearing and had since issued its 2013 FOF-COL. <u>See</u> Part I <u>supra</u>. While the 2012 FOF-COL found in favor of Naumu, the MAB's 2013 FOF-COL found in favor of DPS. The purpose of HRCP Rule 60(b)(6) is not to automatically relieve Naumu of an outcome that was detrimental to him by reinstating the 2012 FOF-COL. <u>See Citicorp Mortg., Inc. v. Bartolome</u>, 94 Hawaiʻi 422, 436, 16 P.3d 827, 841 (App. 2000), abrogated on other grounds by <u>Chen v. Mah</u>, 146 Hawaiʻi 157, 457 P.3d 796 (2020).

Assuming <u>arguendo</u> that Naumu's motion was proper under HRCP Rule 60(b)(6), the Circuit Court did not abuse its discretion in finding that there were no extraordinary circumstances warranting relief under HRCP Rule 60(b)(6). <u>See Uyehara</u>, 77 Hawaiʻi at 148, 883 P.2d at 69. Here, Naumu does not proffer any extraordinary circumstances that afford him relief under HRCP Rule 60(b)(6). The only point that Naumu argues is that the Circuit Court should have granted his motion because "in [the MAB's 2013 FOF-COL], the MAB for the first time issue[d] a thorough" FOF, COL, and Order, and that the new FOFs and COLs included in the 2013 FOF-COL "could have and should [sic] been employed in construing [2012 FOF-COL] considering that the MAB's decision was adequately support[ed] by the documentary evidence, written evidence, and/or recording or transcript of MAB3 [sic], and Naumu's and MAB's answering briefs." Naumu does not provide any authority that says the MAB issuing a more detailed FOF-COL is an extraordinary circumstance. <u>See Uyehara</u>, 77 Hawaiʻi at 148-49, 883 P.2d at 69-70. We conclude that the Circuit Court did not abuse its discretion in denying Naumu's HRCP Rule 60(b) Motion for Relief. <u>See PennyMac Corp.</u>, 148 Hawaiʻi at 327, 474 P.3d at 268.

### C. Third Point of Error, 2015 Remand Order

Naumu contends that the Circuit Court erred in its 2015 Remand Order by upholding the MAB's 2013 FOF-COL finding that Naumu's dismissal from employment was substantiated by the evidence provided to the MAB pursuant to HRS § 76-47(e) and HAR § 14-25.1-4(x).[20] Naumu claims that: the MAB failed to comply

---

[20] HRS § 76-47(e) (2000) provides, in pertinent part:

Any civil service employee, who is suspended, discharged, or demoted and who is not included in an appropriate bargaining unit under section 89-6, may appeal to the merit appeals board within twenty days after a final decision is made under the internal complaint procedures.

Upon the appeal, both the appealing employee and the appointing authority shall have the right to be heard publicly, present evidence and be represented by counsel, who shall have the right to examine and cross-examine witnesses. At the hearing technical rules of evidence shall not apply and the evidence shall be taken stenographically or recorded by machine. For the purpose of hearing the appeals fairly and expeditiously, the board may at any time appoint a competent and qualified disinterested person to act as its hearing officer. The hearing officer shall hear the matter in the same manner as if it were before the board and upon the conclusion of the hearing, shall report the hearing officer's findings of fact and the hearing officer's conclusions and recommendations based thereon to the board and to the employee. The board shall render the final decision in accordance with section 91-11.

If the board finds that the reasons for the action are not substantiated in any material respect, the board shall order that the employee be reinstated in the employee's position, without loss of pay, but if the board finds that the reasons are substantiated or are only partially substantiated, the board shall sustain the action of the appointing authority, provided that the board may modify the action of the appointing authority if it finds the circumstances of the case so require and may thereupon order such disposition of the case as it may deem just.

The findings and decisions of the board shall be final on all appeals, unless an appeal is taken as provided in chapter 91.

HAR § 14-25.1-4(x) (effective 2003) provides, in pertinent part:

(x) In its action on an appeal by a civil service employee who has been suspended, discharged, or demoted, both the appealing employee and the appointing authority shall have the right to be heard publicly, present evidence, and be represented by counsel who shall have the right to examine and cross-examine witnesses. At the hearing, technical rules of evidence shall not apply and the evidence shall be taken stenographically or recorded by machine.

(continued...)

with HAR § 14-25.1-4(y) as it failed to make a ruling on Naumu's proposed findings of fact; failed to include certain "undisputed facts" on the Chow Policy in the 2013 FOF-COL; and the MAB's sustaining Naumu's dismissal was an arbitrary, capricious, abuse of discretion.

We reject Naumu's argument that the 2013 FOF-COL violated HAR § 14-25.1-4(y) for failing to include "undisputed facts" about the "Chow policy."  Naumu argues that his fifty-four proposed FOFs "included findings related to the existence of and Naumu's adherence to the Chow Policy."  DPS argues that there was no "chow or meal 'policy'" and thus no need for the MAB to make findings in that regard.  Yet, Naumu concedes that a separate ruling on each proposed finding filed by a party "is not strictly required," as long as the agency incorporate its findings in its decision and its findings are reasonably clear.  See Application of Terminal Transp., Inc., 54 Haw. 134, 139, 504 P.2d 1214, 1217 (1972).  This argument is without merit.

The record supports the MAB's finding that Naumu's dismissal was substantiated or partially substantiated by the evidence.  See Martinez, 137 Hawaiʻi at 87-88, 365 P.3d at 1016-17.  At the April 25, 2013 hearing before the MAB, Director Sakai testified that Naumu was investigated for his role in the March 21 inmate escape (FOF 19); that Naumu was subject to the DPS standards of conduct (FOF 25); that the OCCC holding unit was not properly staffed and that although ACO Lepere[21] made mistakes,

---

[20](...continued)
      (1)  If reasons for an action by the director or appointing authority are not substantiated in any material respect, the board shall order that the employee be reinstated in the employee's position, without loss of pay.

      (2)  If the reasons are substantiated or are only partially substantiated, the board shall sustain the action of the director or appointing authority; provided that the board may modify the action of the director or appointing authority if it finds the circumstances of the case so require and may order the disposition of the case it may deem just provided that the disposition is consistent with laws, rules, and policies.

[21]    The hearing transcript misspells ACO Lepere's name as "ACO LaPair."

the inmate escape was due to the improper staffing (FOF 21); and Sgt. Ben Almadova was allowed to leave the facility on a busy night during the Third Watch, leaving only two officers, instead of four, in the holding unit (FOFs 21, 24).  Thus, the MAB's findings in the 2013 FOF-COL were substantiated or partially substantiated by the evidence pursuant to HRS § 76-47(e) and HAR § 14-25.1-4(x).  See Application of Terminal Transp., Inc., 54 Haw. at 139, 504 P.2d at 1217.  We conclude that the Circuit Court did not err in its 2015 Remand Order by upholding the 2013 FOF-COL in this regard.  See Watanabe, 148 Hawaiʻi at 513, 479 P.3d at 131.

> **D.   Fourth Point of Error, the September 2015 MAB hearing**

In his fourth point of error, Naumu contends that the Circuit Court and the MAB erred and violated his due process rights when:  (1) the MAB denied Naumu's pre-hearing request to conduct additional discovery and present evidence during the September 24, 2015 hearing; and (2) that it was improper for the MAB to "unilaterally" determine that two MAB members would preside over the hearing, and not require the attendance of MAB Chair Au at the hearing based on his absence from the prior MAB hearings.  Naumu's contentions are without merit.

> **1.   The MAB's denial of Naumu's pre-hearing request to conduct additional discovery and to present evidence did not violate due process under the circumstances of this case.**

Relying on HAR § 14-25.1-4(a) and (d),[22] Naumu argues that, "[a]s a matter of law," at the September 24, 2015 MAB hearing, he had the right to conduct additional discovery and present evidence on the remanded issue.

---

[22]    HAR § 14-25.1-4(a) (effective 2003) states in pertinent part, "An appeal shall be conducted as a contested case under chapter 91, Hawaii Revised Statutes.  The board shall order the matter set for hearing. . . . Opportunities shall be afforded all parties to present evidence and argument on all issues involved."

HAR § 14-25.1-4(d) (effective 2003) states in pertinent part, "An application for subpoena requiring the attendance of witnesses or the production of documentary evidence from any place within the State at any designated place or hearing shall be made in writing to the board . . . ."

The authority Naumu relies on, comes from the "Appeal hearing" rule of HAR § 14-25.1-4, under the "Rules of Practice and Procedure, State Merit Appeals Board." See generally HAR, Title 14, Chapter 21.1. The appeal hearing rule sets forth the procedure and process for appeal hearings before the Board. While the appeal hearing rule requires that parties be afforded opportunities to present evidence on "all issues involved" in subsection (a), and provides for subpoenas for the production of documentary evidence in subjection (d), the rule also confers discretion and authority to the officer presiding over the MAB hearing to set forth the procedure appropriate for the hearing and to control the course and scope of the hearing itself. See HAR §§ 14-25.1-4(i), (*l*), and (n). Subsection (i) provides that:

> [t]he presiding officer at a proceeding shall have authority to control the course of the hearing; . . . to grant application for and issue subpoenas; . . . to rule upon offers of proof and receive relevant evidence; to limit lines of questioning or testimony that are irrelevant, immaterial, or repetitious; . . . . and to take all other actions authorized by [HRS] chapters 76 and 91 . . . , rules of the board or by any other statute that are deemed necessary to the orderly and just conduct of the hearing.

(Emphases added). In addition to the specific "authority to control the course" of the hearing conveyed in subsection (i), the appeal hearing rule provides the presiding officer control over the scope and manner of the presentation of evidence at the hearing. Subsection (n) affords a "reasonable opportunity to offer testimony with respect to the matters relevant to the proceeding." (Emphases added). Subsection (n) specifically requires the officer to properly confine testimony: "The presiding officer or hearing officer shall confine the testimony to the matters for which the hearing has been called . . . . " (Emphasis added).

Here, the Circuit Court's 2015 Remand Order gave the MAB "the discretion whether or not to allow the parties to recall witnesses and/or present new evidence." The remand was for a "limited hearing to only consider the discrete issue" as to whether the MAB should exercise its discretion to modify the dismissal action. The 2015 MAB appeal hearing was a remand from

an appeal of the prior 2013 MAB appeal hearing, which had lasted three days:  April 25, 2013;  July 25, 2013; and August 27, 2013.  During the 2013 three-day hearing, Naumu, Director Sakai, Hearings Officers Nobriga and Nadamoto testified.  The 2013 MAB hearing was also the third time the case was heard by the MAB, following the first 2006 appeal hearing, and the second 2010-11 appeal re-hearing.  Thus, the record reflects that Naumu did have an opportunity "to present evidence and argument on all issues involved."  HAR § 14-25.1-4(a).  We conclude that the MAB did not abuse its discretion by not allowing the parties to conduct additional discovery or present new evidence at the hearing.

Naumu's argument that he was entitled to present new evidence at the 2015 limited appeal hearing is not persuasive.  In Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan, 87 Hawaiʻi 217, 239-41, 953 P.2d 1315, 1337-39 (1998), the supreme court determined that HRS Chapter 91, the Hawaiʻi Administrative Procedures Act does not require that a contested case hearing be conducted de novo with evidence not already considered by the agency.  The Korean Buddhist Court found that the appellant Buddhist temple had numerous opportunities to submit evidence and had the right to cross-examine witnesses at prior hearings, and thus the record in those proceedings was sufficient for the agency to review.  Id. at 240, 953 P.2d at 1338.  Here, the MAB similarly had access to the record of the previous 2013 appeal re-hearing, which included the transcripts of the prior testimonies of Director Sakai, Hearings Officer Nadamoto and Nobriga, and Naumu.  Thus, the record was sufficient for the MAB to review.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Sandy Beach Def. Fund v. City Council of Cty. of Honolulu, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989) (citation omitted).  Naumu's due process rights were not violated by the MAB's discretionary decision not to reopen his case to further witnesses and testimony.  See Korean Buddhist, 87 Hawaiʻi at 240, 953 P.2d at 1338.  The MAB's exercise of its discretion was

consistent with the Circuit Court's order and the appeal hearing rule, and did not constitute an abuse of discretion because Naumu had previously been afforded opportunities to be heard in a meaningful time and a meaningful manner, consistent with procedural due process.  See HAR §§ 14-25.1-4(i), (*l*), and (n); Sandy Beach Def. Fund, 70 Haw. at 378, 773 P.2d at 261.  We conclude that the Circuit Court did not err in rejecting Naumu's claim of a due process violation on this basis.  See Watanabe, 148 Hawaiʻi at 513, 479 P.3d at 131.

> **2.    The plain language of the appeal hearing rule, HAR § 14-25.1-4, does not require the full three-member MAB to preside over the appeal hearing.**

Naumu contends that he had the right to have the September 24, 2015 hearing to be heard by the full three-member MAB pursuant to HAR § 14-25.1-4(f).[23]  Naumu argues that there is no rule under HAR Title 14 that allows the MAB to "unilaterally" decide that a Board Member need not attend a hearing "simply because that Board Member was not present during a prior hearing," nor to allow the absent Board Member to "act as a tie-breaking vote in the event the two other Board Members cannot agree."  Naumu argues that the plain language of the words "before the board" in subsection (f) means the full Board and not a partial Board.

We do not agree with Naumu that "before the board" in the appeal hearing rule must mean the full three-member Board. HAR § 14-25.1-4(f) (effective 2003) provides:  "Appeals shall be heard before the board or a hearing officer or panel of subject matter experts duly appointed by the board."  The rule's language unambiguously permits even a single hearing officer or a panel of subject matter experts to hear appeals, in addition to the board. The very next subsection, HAR § 14-25.1-4(g) (effective 2003) provides:  "[t]he chairperson shall preside over appeals heard by the board itself.  In the absence of the chairperson, another

_____

[23]    In his Opening Brief, Naumu erroneously cites to the rule as HAR § 14-21.1-4(f).

member, designated by the board, shall preside."  Thus, if the chairperson is not present at the appeal hearing, another MAB member is designated as acting chairperson.  HAR § 14-25.1-4(g).  The appeal hearing rule plainly and unambiguously allows two of the three MAB members to conduct the hearing.  See Community Ass'n of Hualalai, 150 Hawai'i at 252, 500 P.3d at 437.

   The MAB's decision to conduct the hearing with only Pacheco and Santiago was permitted by HAR § 14-25.1-4(g), and there was no due process violation.  The Circuit Court's conclusion that the MAB was allowed to conduct the hearing with only two MAB members was not wrong.[24]  See Martinez, 137 Hawai'i at 87-87, 365 P.3d at 1016-17.  The Circuit Court did not err in rejecting Naumu's claim of a due process violation on this basis.  See Watanabe, 148 Hawai'i at 513, 479 P.3d at 131.

### E. Fifth Point of Error, 2016 Order Dismissing Appeal and 2015 FOF-COL.

   In his final point of error, Naumu contends that the Circuit Court, in its 2016 Order Dismissing Appeal and the MAB in its 2015 FOF-COL, erred in not modifying Naumu's dismissal and in not finding that the circumstances were such that modification would be deemed just.  Naumu argues that it was an abuse of discretion to not overturn his dismissal based on the facts and circumstances of the case.  Naumu's contention is without merit.

   First, Naumu argues that the MAB's decision to uphold DPS's termination of Naumu was "premised on the idea that Naumu violated a DPS rule, policy or procedure."  Naumu alleges that the MAB "disregarded the undisputed evidence that Naumu did not violate any DPS policy, but rather followed one [the Chow Policy], and thus there was no cause for his termination."

   An appellant seeking to overturn an agency's determination made within the agency's expertise "has a high burden to demonstrate that the agency abused its discretion."  Paul's Elec. Serv., Inc. v. Befitel, 104 Hawai'i 412, 429, 91

---

[24] In light of our disposition based on the plain language of the appeal hearing rule, it is not necessary to address DPS's and the MAB's counter-argument that a two-member MAB was permissible because two members constituted a "quorum" under HRS § 92-15 and HAR § 14-1.1-10.

P.3d 494, 501 (2004). "[A] determination made by an administrative agency acting within the boundaries of its delegated authority will not be overturned unless 'arbitrary, or capricious, or characterized by . . . [a] clearly unwarranted exercise of discretion.'" Id. (citation omitted).

Here, Naumu has not sustained his burden of demonstrating that the MAB abused its discretion in not overturning Naumu's dismissal. See id. The record reflects that the Circuit Court's 2015 Remand Order specifically ordered the MAB to conduct a limited hearing on the "discrete issue" of whether the MAB should modify DPS's dismissal action. The MAB was not directed to reopen the hearing to allow Naumu to relitigate the existence of the "Chow Policy" at OCCC. The MAB is authorized to reinstate a civil service employee to the employee's position if the "action by the director or appointing authority are not substantiated in any material respect." HAR § 14-25.1-4(x); see HRS § 76-47(e); Paul's Elec. Serv., Inc., 104 Hawaiʻi at 419, 91 P.3d at 501. The MAB found that the decision by DPS was substantiated by the evidence that Naumu violated various Standards of Conduct relevant to his position as Captain: Naumu was informed of the NIC audit findings concerning improper security measures following the January 17, 2001 inmate escape (FOF 27); DPS's internal investigation determined that Naumu's failure to adhere to the OCCC security procedures and policies probably contributed to the escape attempt (FOF 20); Naumu did not inform the immediate supervisor for the Almadovas that both Almadovas were being permitted to leave the premises (FOF 14); the March 21, 2001 inmate escape occurred on Naumu's watch (FOF 21); Naumu's permission for Sgt. Ben Almadova to be absent for an extended period of time contributed to an insufficiency of personnel (FOF 22); and allowing the Almadovas to leave for a meal break was a discretionary error in judgment regarding the manpower and security presence in the Holding Unit during the March 21, 2001 inmate escape (FOFs 22, 27). Thus, the MAB's finding that the DPS's dismissal of Naumu was substantiated by the record, and the MAB's decision to not overturn DPS's

determination, did not constitute an abuse of discretion by the MAB.[25]  See Paul's Elec. Serv., Inc., 104 Hawaiʻi at 419, 91 P.3d at 501.  We conclude that the Circuit Court did not err in its 2016 Order Dismissing Appeal affirming the MAB's decision to not modify Naumu's dismissal in its 2015 FOF-COL.  See Watanabe, 148 Hawaiʻi at 513, 479 P.3d at 131.

## IV. CONCLUSION

For the reasons set forth above, we affirm the (1) Order Remanding Employer-Appellant State of Hawaiʻi, Department of Public Safety's Agency Appeal Filed February 3, 2012, filed November 28, 2012 in Civil No. 12-1-0331-02 by the Circuit Court of the First Circuit; (2) Order Denying Employee-Appellee Ronald N. Naumu's Motion for Relief from "Order Remanding Employer-Appellant State of Hawaii, Department of Public Safety's Agency Appeal filed February 3, 2012," Filed November 28, 2012, filed March 3, 2014 in Civil No. 12-1-0331-02 by the Circuit Court of the First Circuit; (3) Findings of Fact, Conclusions of Law and Order dated November 25, 2013 in Merit Appeals Board Case No. 26; (4) Order Remanding Employee-Appellant Ronald N. Naumu's Agency Appeal Filed December 24, 2013, filed March 6, 2015 in Civil No. 13-1-3353-12 by the Circuit Court of the First Circuit; (5) Amended Findings of Fact, Conclusions of Law, Decision and Order dated November 19, 2015 in Merit Appeals Board Case No. 26; (6)

---

[25]  We also reject Naumu's challenges to FOFs 20 and 22, that appear for the first time on the last page of the "Discussion" section of the Opening Brief, alleging that these FOFs were "incorrect."  In FOF 20, Naumu takes issue with the phrase "Sergeant Almadova probably contributed in part to the escape opportunity" and argues that the evidence shows that Almadova did contribute rather than just "probably" contributed.  (Emphasis added).  Naumu argues that FOF 22 is not supported by the record and that the record reflects that Naumu believed that Sgt. Ben Almadova was immediately returning to the facility after buying dinner.

Naumu's challenges go to the weight of the evidence and resolution of conflicts in testimony -- all of which are not the province of an appellate court.  See Application of Hawaiian Elec. Co., Inc., 81 Hawaiʻi 459, 465, 918 P.2d 561, 567 (1996) (observing that appellate courts "decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field.") (citation omitted)).  FOFs 20 and 22 have not been shown to be clearly erroneous.  See id.; Martinez, 137 Hawaiʻi at 87-88, 365 P.3d at 1016-17.

Order Dismissing Employee-Appellant Ronald N. Naumu's Agency Appeal Filed December 21, 2015, filed September 19, 2016 in Civil No. 15-1-2432-12 by the Circuit Court of the First Circuit; (7) Final Judgment filed September 30, 2016 in Civil No. 15-1-2432-12 by the Circuit Court of the First Circuit; and (8) Final Judgment filed October 30, 2020 in Civil No. 12-1-0331-02 by the Circuit Court of the First Circuit.

DATED:  Honolulu, Hawaiʻi, February 17, 2022.

On the briefs:

Sunny S. Lee
(Bronster Fujichaku Robbins)
for Employee/Appellee-
Appellant

Kimberly Tsumoto Guidry
Deputy Solicitor General
for Employer/Appellant-
Appellee

Ernest H. Nomura
Deputy Corporation Counsel
City and County of Honolulu
for Agency-Appellee-Appellee

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge